## UNITED STATES v. SEAMAN.

*(Circuit Court, S. D. New York.    April 7, 1885.)*

1. FEDERAL ELECTIONS—REV. ST. §§ 5511, 5514—FRAUDULENT ATTEMPT TO VOTE AT ELECTION FOR REPRESENTATIVE IN CONGRESS—INDICTMENT.

    An indictment charging a party with a fraudulent attempt to vote in the name of another person at an election for a representative in congress had and conducted under the laws of the state of New York, by which state officers and representatives to congress are voted for on separate ballots, which are deposited in separate ballot-boxes, that fails to allege that such party attempted to vote for a representative in congress, is insufficient.

2. SAME—CONSTRUCTION OF REV. ST. §§ 5511, 5514.

    The essence of the crime created by section 5511 of the United States Revised Statutes is an attempt to vote unlawfully for a representative in congress, and not merely an attempt to vote unlawfully at an election at which a representative may be voted for.

On Motion in Arrest of Judgment.

*Elihu Root,* U. S. Dist. Atty., *Benj. B. Foster,* Asst. U. S. Dist. Atty., and *Charles A. Hess,* for defendant.

WALLACE, J.    The defendant was tried and convicted upon an indictment charging him with a fraudulent attempt to vote in the name of another person at an election for a representative in congress had and conducted under the laws of the state of New York on the fourth day of November, 1884.    The indictment did not allege that the defendant attempted to vote for a representative in congress.    Nor did the evidence upon the trial show such an attempt specifically. State and local officers were voted for at that election.    There were seven separate ballots and separate boxes.    Under the laws of this state separate ballots are required for representatives in congress from those which contain the names of state officers and local officers.    It appeared by the evidence that the defendant presented himself at the polls and handed to one of the inspectors of election a ballot or ballots, when a question arose as to his right to vote by the name which he gave, and he was arrested.    At the close of the evidence the counsel for the defendant asked for an instruction that the defendant be acquitted upon several grounds, and among them, because there was no proof that he had attempted to vote for a representative in congress.    The court refused to give this instruction to the jury, and instructed them that they were authorized to find the defendant guilty if they were satisfied upon the evidence that he attempted to vote at the election under an assumed name.

The question is now made, upon a motion in arrest of judgment and for a new trial, whether the indictment was sufficient, and whether there was error in the ruling at the trial.    The offense for which the defendant was indicted was created by the act of congress of May 31, 1870, commonly known as the enforcement act, and is now found in section 5511, Rev. St., in the chapter relating to crimes against the elective franchise.    The section declares:

"If, at an election for representative or delegate in congress, any person knowingly personates and votes, or attempts to vote, in the name of any other person, whether living, dead, or fictitious, or votes more than once at the same election for any candidate for the same office,   \*    \*    \*   he shall be punished by a fine of not more than $500, or by imprisonment not more than three years, or by both, and shall pay the costs of the prosecution."

Section 5514 declares that "whenever the laws of any state require that the name of a person to be voted for as representative in congress shall be contained on any ballot with the names of other persons to be voted for at the same election as state, municipal, or local officers, it shall be deemed sufficient *prima facie* evidence to convict any person charged with voting or offering to vote unlawfully under the provisions of this chapter, to prove that the person so charged cast or offered to cast a ballot wherein the name of such representative might by law be printed or contained." Although the language of section 5511 is sufficiently broad to authorize a conviction when the accused has voted or attempted to vote in the name of another at any election for representative in congress, irrespective of the fact whether he voted or attempted to vote for such representative or not, it ought not to be so construed, even if resort could not be had to section 5514 for interpretation of its meaning. If such a construction were admissible a grave doubt would be suggested whether congress had not transgressed its constitutional power by creating an offense which it is the exclusive province of the state to create and punish.

It is for the several states to determine by their own laws how their own officers shall be elected, who may or may not vote for such officers, and what acts of commission or omission, respecting the exercise of the elective franchise in the election of such officers, shall be criminal. The only restriction upon their power in this behalf is found in that article of the constitution which prohibits the state from denying or abridging the rights of citizens to vote on account of race, color, or previous condition of servitude, and the appropriate legislation of congress to enforce this provision.

The power of congress to intervene by legislation respecting such offenses as the one for which the defendant was tried, is conferred, if it has been conferred at all, by that clause of the constitution which declares that "the times, places, and manner of holding elections for senators and representatives shall be prescribed by each state by the legislature thereof; but the congress may at any time make or alter such regulations, except as to the place of choosing senators." It has been seriously debated whether the power to regulate the "times, places, and manner of holding elections" includes the power to prescribe any regulations or restrictions upon the exercise of the elective franchise by the voters of the states, and whether any interference with the authority of the states to declare who shall vote or shall not vote, and what penalties shall attach to unlawful voting, or for the violation of their own laws concerning elections, is warranted by the power

to regulate the "manner of holding elections." It has been contended that the object of the provision was simply to give to the national government the means to protect itself from being crippled by hostile action of the states in refusing to provide suitable means for holding elections for representatives. The supreme court, however, have decided otherwise in *Ex parte Siebold,* 100 U. S. 371, and *Ex parte Clarke,* Id. 399, where the constitutionality of some of the provisions of the enforcement act were vindicated. It was there held that congress, in the exercise of its lawful authority, could make the violation of state laws for securing the purity of elections by state officers a federal crime; but the court was careful to confine its opinion to the constitutional validity of such legislation when it was legitimately exercised to regulate elections for representatives in congress; and Mr. Justice BRADLEY, speaking for the court in *Ex parte Siebold,* used the following language:

"In what we have said it must be remembered that we are dealing only with the subject of elections of representatives to congress. If, for its own convenience, a state sees fit to elect state and county officers at the same time, and in conjunction with the election of representatives, congress will not be thereby deprived of the right to make regulations in reference to the latter. We do not mean to say, however, that for any acts of the officers of election, having exclusive reference to the election of state or county officers, they will be amenable to federal jurisdiction; nor do we understand that the enactments of congress now under consideration have any application to such acts."

No act of congress should be interpreted, unless the language used admits of no other interpretation, to press beyond the certain confines of constitutional power, (*U. S.* v. *Coombs,* 12 Pet. 72;) and especially should this rule be observed in the interpretation of a criminal statute relating to offenses upon the border line of the national jurisdiction. Such, clearly, would be the character of the statute in question if it explicitly made it a crime to vote or attempt to vote under an assumed name for a state or county officer at any election for a representative in congress. Such a statute would not only be of doubtful constitutionality, but no doubt is entertained that it would be plainly unconstitutional, unless the act made criminal could in some way affect the election of a representative, as it might in those states where ballots for the state or local officers contain also the name of the candidate for representative.

Aside from these general considerations, a clear exposition of the meaning of the section is furnished by section 5514. That section can have no application if it is unnecessary to prove, upon the trial of an indictment under section 5511, that the accused voted or attempted to vote for a representative in congress. It demonstrates the intention of congress to legislate only to the extent required to secure an honest and unvitiated election of representatives, and in this behalf not to make any act penal which does not necessarily militate against this object.

Reading both sections together it seems plain that the essence of the crime created by section 5511 is an attempt to vote unlawfully for a representative in congress, not an attempt to vote unlawfully at an election at which a representative may be voted for. The indictment should therefore have charged that such an attempt was made by the defendant.

As there was no such averment, the defendant was improperly convicted.

BENEDICT, J. I am of the opinion that the defendant is entitled to a new trial, for the reason that at the trial it was conceded by the district attorney that the indictment did not aver an attempt to vote for representative in congress. The charge to the jury, to which no exception was taken, shows that the case was tried upon this understanding. If it had been submitted to the jury to say whether the evidence satisfied them that the accused attempted to vote for representative in congress, and the jury upon such a charge had found the accused guilty, I incline to think the indictment sufficient after verdict to authorize judgment. The imperfect averment of the indictment would have been cured by such a verdict. But the verdict, taken in connection with the charge, renders it plain that the jury did not by their verdict necessarily find the accused guilty of having attempted to vote for a representative in congress. The absence of such a finding entitles the accused to a new trial.

BROWN, J. The defendant, in my judgment, could not be lawfully convicted unless the jury found that he attempted to vote for a representative in congress. Upon the evidence and proper instructions, the jury might possibly have found that he did attempt to vote for a representative in congress. Had they been instructed they must find such an attempt or acquit the defendant, the imperfect averment in the indictment would, I am inclined to think, have been cured by a general verdict of guilty. But the instructions given, and the disclaimer by the district attorney at the close of the trial, in effect completely withdrew this question from consideration of the jury. The verdict of guilty does not, therefore, import a finding that the defendant attempted to vote for a representative in congress; and upon this ground alone, and without expressing any opinion on the other topics considered in the opinion of the circuit judge, I think a new trial should be ordered.