UNITED STATES v. STONE et al.

(District Court, D. Maryland. July 5, 1911.)

1. STATUTES (§ 241*)—PENAL STATUTES—CONSTRUCTION.

The court, in construing a highly penal statute, may not extend doubtful words beyond their natural meaning in the connection in which they are used; but, though the statute must be strictly construed, it must not be so construed as to defeat the legislative will.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 322; Dec. Dig. § 241.*]

2. CONSPIRACY (§ 29*)—INJURY—DEPRIVATION OF RIGHT TO VOTE—CRIMINAL RESPONSIBILITY—"INJURE."

Pen. Code, § 19 (Act March 4, 1909, c. 321, 35 Stat. 1092 [U. S. Comp. St. Supp. 1909, p. 1396]), punishing persons conspiring to injure any citizen in the free exercise of any right or privilege secured to him by the federal Constitution and laws, covers a conspiracy to deprive a citizen of his right to vote at a congressional election and thereby injure him, within the ordinary meaning of the word "injure," and a conspiracy to deprive illiterate negro voters of their right to vote by preparing the bal-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lots in such a way as to make it difficult to vote for their candidate for Congress is punishable.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 49; Dec. Dig. § 29.*

For other definitions, see Words and Phrases, vol. 4, pp. 3612, 3613.]

3. CONSPIRACY (§ 43*)—DEPRIVATION OF RIGHTS—INDICTMENT—REQUISITES.

An indictment charging a conspiracy to deprive negro voters of their right to vote at a congressional election, in violation of Pen. Code, § 19 (Act March 4, 1909, c. 321, 35 Stat. 1092 [U. S. Comp. St. Supp. 1909, p. 1396]), need not allege the names of the negro voters whom defendants intended to injure.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79-99; Dec. Dig. § 43.*]

4. CONSPIRACY (§ 43*)—DEPRIVATION OF RIGHTS—INDICTMENT—REQUISITES.

An indictment, alleging that accused aided and abetted two persons named who conspired to deprive citizens of their right to vote at a congressional election by printing the ballots for the other two with knowledge of their purpose, is sufficient as against a demurrer.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 43.*]

5. CONSPIRACY (§ 43*)—DEPRIVATION OF RIGHTS—INDICTMENT—REQUISITES.

An indictment, charging a violation of Pen. Code, § 37 (Act March 4, 1909, c. 321, 35 Stat. 1096 [U. S. Comp. St. Supp. 1909, p. 1402]), punishing a conspiracy to commit the offense punishable by section 20, punishing any one who under color of any law deprives an inhabitant by reason of color or race of any rights secured by the federal Constitution or laws, which alleges that a state law requires that the official ballots in a designated part of the state shall be arranged in alphabetical order with a designation of the political party, and that sample ballots must be posted before the election, and that in other parts of the state the supervisors of election may arrange the names of the candidates in any order without party designation and without furnishing sample ballots: that the Legislature in enacting the law intended to give the supervisors of election of the counties where the negro population is large the opportunity to so arrange the ballots as to deprive negro voters of the right to vote; and that defendants by the form of the ballots adopted made it extremely difficult for negro voters to vote their choice at a congressional election, etc.—is sufficient as against a demurrer, though it does not allege that the state statute is, on its face, directed against negro voters, and does not disclose an intent to discriminate against negro voters.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79-99; Dec. Dig. § 43.*]

John E. Stone and others were indicted for crime. Demurrer to each indictment overruled.

John Philip Hill, Edgar H. Gans, and J. Craig McLanahan. Asst. U. S. Atty., for the United States.

William L. Marbury, William S. Bryan, Jr., Edgar Allan Poe, and William L. Rawls, for defendants.

Before MORRIS and ROSE, District Judges.

ROSE, District Judge. Two indictments have been returned against the above-named defendants. They have demurred to each of them. The government says that indictment 354 properly charges a violation of section 19 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1092 [U. S. Comp. St. Supp. 1909, p. 1396; R. S. § 5508]). That section provides for the punishment of any two or more persons who conspire to injure, oppress, threaten, or intimidate any citizen in

the free exercise or enjoyment of any right or privilege secured to him by the Constitution and the laws of the United States or because of his having so exercised the same.

There are two counts in the indictment. They are alike, except that in the first count the right or privilege of the citizens interfered with is said to be the right to vote at the congressional election held on the 8th day of November, 1910, in the Fifth congressional district of Maryland for a representative in the Congress of the United States. In the second count the right or privilege is alleged to be the right to vote at said congressional election for a candidate for Congress without discrimination against them by the state of Maryland acting through its election officers and otherwise on account of their race and color.

In each count it is alleged that the citizens in question were all duly qualified and registered under the laws and Constitution of Maryland and the laws of the United States to vote for such representative in Congress at said election in Charles county, Md.

When we speak of the indictment, it will therefore be understood that what we say is applicable to each of the counts, unless the contrary is stated.

The indictment charges that on November 8, 1910, an election was held in the Fifth congressional district of Maryland to choose a representative in the Congress of the United States. The defendants, Stone and Miller, together with one J. Wirt Wilmer, were under the laws of Maryland supervisors of election for Charles county. Charles county is in the Fifth congressional district. It was their official duty to provide and cause to be printed the ballots to be used at such election. No ballots except those provided by them could lawfully be cast or counted. In Charles county there were a large number of persons of the negro race and of black color, citizens of the United States and of the state of Maryland and residents of Charles county. They were duly qualified and registered voters in such county, and under the Constitution and laws of Maryland and the Constitution of the United States were entitled to vote for a representative in Congress at said election. A large number of said negro voters were illiterate. They could neither read nor write. There is no educational qualification for the right to vote prescribed by the Constitution and laws of Maryland. Stone and Miller constituted a majority of the board of supervisors of election. They conspired together to injure a large number of the duly qualified and registered negro voters in Charles county on account of their race and color in the free exercise of their right to vote at the election named for a representative in Congress. The indictment says that that right is a right secured to them and each of them by the Constitution and laws of the United States. Stone and Miller prepared and had printed and folded the official ballots in such form that any voter could easily vote for the Democratic candidate. It was difficult for any of the illiterate negro voters to vote for the Republican candidate. It would be impossible for many of them so to do. A detailed description of the ballot is given in the indictment. It is not necessary to repeat that description here. The

ballot as described was so peculiar as to suggest that those who directed its preparation must have had some other purpose in mind than to facilitate the qualified and registered voters of the county in voting for the candidates of their choice. It was conceded at the argument that such a ballot made it very much more difficult to vote for the Republican than for the Democratic candidate for Congress. The indictment says that the form of ballot was devised by Stone and Miller with the intent and purpose, on account of the race and color of said negro voters, to make it impossible for many of the duly qualified and registered negro voters of Charles county, and difficult for any of them; to vote at said congressional election for the candidate of their choice; the said Stone and Miller well knowing that said duly qualified and registered negro voters would in all probability vote for the candidate of the Republican party and not for the candidate of the Democratic party.

The defendant Dulany is charged with aiding and abetting Stone and Miller by printing the ballots for them. It is said that he well knew that Stone and Miller's purpose in causing the ballots to be printed in the way they were printed was the purpose already set forth in the indictment.

The defendants say that the indictment is bad because such a conspiracy as is charged against them is not a conspiracy to injure the negro citizens referred to within the meaning of the word "injure" as used in section 19. They argue that no conspiracy is punishable by the statute in question unless the purpose of it is to cause personal or bodily harm to a citizen or to do some act with intent to control or coerce his will. It is contended that the statute is not violated unless the thing which is purposed to be done is in the nature of a threat, an injury, an oppression, or an intimidation. A conspiracy merely to hinder, delay, or obstruct the exercise of the rights mentioned in the statute is not made a crime by it unless the conspiracy contemplates as the means of its accomplishment the doing of bodily harm or the putting in fear. The defendants claim that to give to this section the construction contended for by the government will make it applicable to all fraudulent practices at congressional elections participated in by two or more persons. They point out that this section 19 was originally enacted contemporaneously with many other provisions punishing various specific acts of fraud or corruption at congressional elections.

Those other provisions were repealed in 1894.

[1] The statute is highly penal. The punishments prescribed by it are much more severe than many of those which were prescribed for other election offenses. In such a statute doubtful words are not to be extended beyond their natural meaning in the connection in which they are used.

This prosecution belongs to a class of cases in which the courts have thought it best to insist on the technical as well as the substantial accuracy of all pleadings. Still it remains true that even such a statute, though it should be construed strictly, must not be so construed

as to defeat the legislative will. Baldwin v. Franks, 120 U. S. 691, 7 Sup. Ct. 656, 763, 30 L. Ed. 766.·

In this case the government does not ask that the word "injure" shall be given any other construction than that which it usually has.

[2] Unlawfully to deprive a citizen of the United States of his right to vote at a congressional election is to injure him in any ordinary use of the word "injure."

The Supreme Court has said of this statute that it covers any conspiracy to prevent the exercise of any of the rights protected by it; or to throw obstruction in the way of exercising such right, or for the purpose or with intent to prevent its exercise. United States v. Waddell, 112 U. S. 80, 5 Sup. Ct. 35, 28 L. Ed. 673.

It does not follow that such a construction of the statute will make it the all-embracing enactment that defendants describe. A voter who votes for a Republican candidate for Congress may be in a very general sense injured by a fraudulent practice which results in the return of a Democratic candidate which would not otherwise have been returned. Indeed, every citizen, whether he voted for the Republican or the Democratic candidate, or for neither, might be said to be injured by a fraudulent return. It does not follow, however, that either the Republican voter or the citizens in general are thereby injured in the sense meant by this statute. A public nuisance injures all the public. For all that, it is only some person who is injured in some way differing from that of the great body of the public who at common law may maintain an action for the damage resulting from such nuisance. It is not every wrongful act which alters the result of the election which is punishable under the section in question. It must be some act which is intended to prevent some citizen or citizens from exercising their constitutional rights.

We think that the conspiracy charged is a conspiracy to injure the negro voters in question in the free exercise of a right or privilege secured to them by the Constitution of the United States. Defendants say that, even if this be so, the conspiracy charged is one which necessarily must have been intended to injure voters because they were Republicans and not because they were negroes. The form of ballot made no discrimination as to race or color. It was a ballot upon which no one would find it easy to vote for the Republican candidate. Any man, whether he was black or white, who was illiterate or poorly educated or had clumsy fingers or poor sight, might have found it impossible to do so. All this may be conceded. The right to vote at a congressional election is a right which was not dependent upon the race or color of the voter. The motive of the defendants might have been, as charged in the indictment, to disfranchise negro voters. If they knowingly conspired to prevent legal and qualified negro voters from voting, they offended against the statute. It would make no difference if in trying to do what they wanted to do they also injured other voters.

[3] Defendants say that the indictment is bad because it does not set forth the names of the negro voters whom the defendants are al-

leged to have intended to injure, and it does not say that their names are to the grand-jury unknown. This objection is, we think, disposed of by the decision of the Supreme Court in the case of Williamson v. United States, 207 U. S. 449, 28 Sup. Ct. 163, 52 L. Ed. 278.

[4] The defendant Dulany says that, whatever may be the case as to his codefendants, he is not charged with any punishable crime. He says he committed no offense in printing the ballots that Stone and Miller told him to print, although he knew why they asked him to print so peculiar a ballot. We think the indictment is on its face good as against him. What the proof may be is another question.

[5] We pass now to the consideration of the demurrer to indictment No. 355. By that the defendants are charged with the violation of section 37 of the Penal Code (R. S. § 5440) by conspiring to commit the offense defined and prohibited by section 20 of the Penal Code (R. S. § 5510). The latter section imposes punishment upon any one who "under color of any law, statute, ordinance, regulation or custom willfully subjects, or causes to be subjected, any inhabitant * * * to the deprivation of any rights, privileges or immunities secured or protected by the Constitution and laws of the United States * * * by reason of his color or race."

Like indictment No. 354, this contains two counts. They differ from each other in the same and in no other respect than that in which one count of No. 354 differs from the other.

No 355 contains all the allegations made in 354. They are phrased in substantially the same language. The material distinction between the two indictments is that No. 355 contains a number of allegations charging that what the defendants are said to have done was done under color of state laws, colloquially described as the Wilson laws. The indictment says that in Baltimore city and in 12 of the counties of the state there are in the aggregate, approximately, 191,451 registered white, and 28,448 registered negro, voters. In that city and in those counties the law requires that on the official ballots the names of all the candidates for each office shall be arranged in alphabetical order with the designation of the party or principle represented by them following after their respective names. Specimen copies of the ballots are required to be posted not less than four days before the election. These counties are commonly called the "non Wilson bill counties." The remaining 11 counties are known as the "Wilson bill counties." In them there are about 39,268 registered white, and 20,-345 registered negro, voters. In the latter counties party designations are not allowed on the ballots. The supervisors of election are authorized to arrange the names of the candidates for each office in any order they see fit. No specimen ballots are required to be posted. It is charged that the Legislature in enacting a different election code for the portion of the state in which the negroes were relatively numerous intended "to give the supervisors of election of said Wilson counties the opportunity and power of so arranging the official ballots to be voted in said Wilson counties in any election to be held therein, and so to keep the said arrangement secret as to subject by reason of their race and color a large number of the duly qualified and regis-

tered negro voters, aforesaid, and especially those who were illiterate, being citizens of the United States and of the state of Maryland, and inhabitants of the said Wilson counties, to the deprivation of the right of voting without discrimination by reason of their race and color at any public election to be held in said Wilson counties."

In addition to the objections which were made to the indictment in No. 354, the defendants say that indictment No. 355 is bad because it is not alleged that the so-called Wilson laws on their face directed or made a discrimination against negro voters.

It is argued that, unless the statutes show by their wording that there is the intent to discriminate against negro voters as such, any discrimination made by the defendants in fact was not made under color of these laws, as the word "color" is to be construed in the statute in question.

We think that this contention is answered in the negative by the opinion in the Supreme Court in Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220.

In view of the fact that we have arrived at the conclusion that the defendants must stand their trial, we have purposely refrained from discussing with elaboration any of the questions involved. Many of them will in other forms doubtless arise at the trial.

The demurrer to each indictment will be overruled.

MORRIS, District Judge, concurs.