## UNITED STATES v. KANTOR et al.

### No. 406.

Circuit Court of Appeals, Second Circuit.

June 24, 1935.

Leo H. Klugherz, of New York City, for appellants.

J. Sidney Bernstein, of New York City, for appellant Samuel Kantor.

Joseph M. Klein, of New York City, for appellants Hendricks and Rushin.

Sidney Brooks Alexander, of New York City, for appellant Max Krasnof.

Martin Conboy, U. S. Atty., of New York City (Jacob Grumet and Francis H. Kinnicutt, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Appellants were convicted for conspiracy to injure, oppress, threaten, and intimidate citizens in the exercise of their civil rights of voting. Cr. Code, § 19, section 51, title 18, U. S. Code (18 USCA § 51). The statute declares it a crime if two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same.

The charge of the indictment was predicated upon appellants' conduct at election

districts when the election of November 8, 1932, took place. It is limited to occurrences in the Twentieth and Twenty-First Election Districts of the Seventeenth Assembly District in New York County and State. The indictment is of one count only, charging appellants with injuring, oppressing, threatening, and intimidating legally qualified voters in those election districts "in the free exercise and enjoyment of the rights and privileges secured to them * * *, to wit, to vote and to exercise the right of suffrage in the election of legally qualified persons for representative in Congress of and for the 19th Congressional District, representatives in Congress at large and United States Senator."

Appellant Kantor was the treasurer of a campaign committee with a duty to distribute money to the captains for the purpose of paying workers on election day. The government's case was predicated on the contention that the appellants interfered with voters at the machines, rang up votes on the machines, forged signatures of voters, and turned the voting machines in improper positions in the polling places.

There is no evidence that any qualified voter, who did not vote because of alleged interference, intended to vote for a candidate for federal office. The indictment alleges that on this day at the election districts, "said voters, as aforesaid, on voting machines duly designated and provided for such purpose in each of the aforementioned election districts, cast and registered and attempted to cast and register their votes for and in the election of representatives in Congress of and for the 19th Congressional District, representatives in Congress at large and United States Senator, as aforesaid."

It was a general election; state offices as well as federal offices were to be voted for. To establish the charge of the indictment showing injury or intimidation to voters, the government depended upon a stipulation wherein it was conceded that "at the election of 1932 there were candidates named for the office of representative in Congress of the 19th Congressional District, for the Congressional representatives at large and for the United States Senator." When this concession was made, the court said: "It is just a question that the qualified voter at that election had a right to vote as he saw fit." There was no concession that voters attempted to or did vote for federal offices as alleged in the indictment. The concession was merely that voters had the right to vote for federal offices, not that they attempted to or did vote for them. It was incumbent upon the government to prove every essential fact necessary to constitute the offense. Drossos v. United States, 2 F.(2d) 538, 539 (C. C. A. 8). In United States v. Seaman (C. C.) 23 F. 882, this court granted a new trial for failure to prove the element of intent to vote for a federal candidate, saying: "The indictment did not allege that the defendant attempted to vote for a representative in congress. Nor did the evidence upon the trial show such an attempt specifically. State and local officers were voted for at that election. * * * The question is * * * whether the indictment was sufficient, and whether there was error in the ruling at the trial." In passing upon instructions to the jury, it was said: "At the close of the evidence the counsel for the defendant asked for an instruction that the defendant be acquitted upon several grounds, and among them, because there was no proof that he had attempted to vote for a representative in congress." For this refusal the judgment was reversed. In Blitz v. United States, 153 U. S. 308, 14 S. Ct. 924, 926, 38 L. Ed. 725, where the accused was indicted under section 5511 of the Revised Statutes, the court reversed a conviction on the count charging voting in the name of another, for the failure to allege that the defendant had in fact voted for a representative in Congress: "He may have voted only for state officers, and yet it could be said, not unreasonably, that he voted at an election had and held for representative in congress, if, in voting for a state officer at such election, he knowingly personated and voted in the name of another, it was an offense against the state, punishable alone by the state, although the general election at which he voted was one at which a representative in congress was chosen."

The court below charged that conviction might be had if the jury found injury to voters "who were entitled to vote for a representative at large in Congress and for a representative in Congress and for a United States Senator." The evidence offered at the trial showed forged signatures and that votes were rung up without the formality of signing the pollbook. Over appellants' exception, the court below charged that legal voters were injured, say-

712

ing: "If by reason of the fact that people who are disqualified are permitted to vote, from the machinations and arrangements of persons who may be in control of the election at this particular place, then my one vote does not count, as it should in the general result, the person so injured is within the protection of this statute, and if people conspire to injure a person in that way, they come within the prohibitions of the statute." After deliberation, the jury returned for further instructions, and the court charged that: "If some of these people who are said not to have had the right to vote did vote here, or if someone improperly rung up votes, that that may be considered an injury to a person who had a right to vote and to have his vote counted, and to the extent that votes were unlawfully cast, why there was an impairment of the' right of those who were legally qualified and who had cast their votes, and thereby they may be said to be injured, because they were not getting the full value of their votes." Later this charge was repeated. Exception was duly taken. We think this charge erroneous.

In United States v. Bathgate, 246 U. S. 220, 38 S. Ct. 269, 271, 62 L. Ed. 676, the court considered an indictment, on demurrer, where the defendants were charged with bribing voters, the claim there being that the right of suffrage secured by the Constitution consists not merely of the right to cast a ballot, but equally of the right residing in the voter to have his vote offset only by other votes honestly cast. The court said: "The government in effect maintains that lawful voters at an election for presidential electors, senator and member of Congress and also the candidates for those places have secured to them by Constitution or laws of the United States the right and privilege that it shall be fairly and honestly conducted; and that Congress intended * * * to punish interference with such right and privilege through conspiracy to influence voters by bribery." And further said: "The right or privilege to be guarded, as indicated both by the language employed and context, was a definite, personal one, capable of enforcement by a court, and not the political, non-judicable one common to all that the public shall be protected against harmful acts, which is here relied on. The right to vote is personal and we have held it is shielded by the section in question."

The history of the legislation is reviewed in United States v. Gradwell, 243 U. S. 476, 37 S. Ct. 407, 61 L. Ed. 857, where the limitations of the power of Congress to regulate elections of senators and representatives is pointed out. The statute does not include the public at large nor electors within its scope. It is the individual voter who is protected. It is not every wrongful act, which alters the result of the election, which is punishable under this section of the statute. It must be some act intended to prevent some citizen from exercising his constitutional rights. United States v. Pleva, 66 F.(2d) 529 (C. C. A. 2); United States v. Stone (D. C.) 188 F. 836, 840. There was no injury to qualified voters by the inclusion of disqualified votes, within the meaning of section 51, 18 USCA. Subtracting votes from the final tally actually deprives individuals of votes honestly cast. United States v. Mosley, 238 U. S. 383, 385, 35 S. Ct. 904, 59 L. Ed. 1355; United States v. Pleva, supra. In 1870, Congress passed an act creating a comprehensive system for the protection of elections (Act of May 31, 1870, c. 114, 16 Stat. 140). This act included section 5511 of the Revised Statutes of the United States, which specifically covered the offense of casting disqualified votes as well as bribery. It was repealed by the Act of February 8, 1894, c. 25, 28 Stat. 37. The Bathgate Case held that this repeal indicated that Congress intended to leave the conduct of elections at which its members were chosen, to state law alone except where it may have expressed a clear purpose to establish some further or definite regulation, and there it was held that bribery of a voter at the federal election did not constitute a crime under title 18, § 51, U. S. Code (18 USCA § 51). By that statute, the offense of disqualified voting was defined and this, too, was repealed. In the Bathgate Case, illegal and disqualified voting was held no longer to be a federal offense. Section 765 of the Penal Law of the State of New York (Consol. Laws N. Y. c. 40) provides punishment within the state law. The charge was erroneous and prejudicial, requiring a reversal of the judgment of conviction.

Judgment reversed.