(91 App. Div. 67.)

### PEOPLE v. DANKBERG.

(Supreme Court, Appellate Division, First Department.   February 5, 1904.)

1. ASSAULT—VERDICT—EVIDENCE.
   Where, in a prosecution for assault, the evidence of all of the witnesses, except prosecutor, agreed that the latter assaulted defendant and kept pushing him away from an oyster stand, and following him up into the street, until defendant finally struck prosecutor with a small cane, inflicting an injury, and the cane was not sufficiently large to constitute a dangerous weapon, but broke in three pieces at the first blow, a verdict convicting defendant of assault was contrary to the weight of evidence.

2. SAME—SELF-DEFENSE.
   Where, in a prosecution for assault, there was no evidence that defendant intended to do more than drive prosecutor, who was assaulting defendant, away, and had no intent either to take his life or inflict great bodily harm, an instruction defining self-defense as authorizing a person to defend himself when he believes his life is in danger, or he is in imminent danger of grievous bodily harm, but requiring him to retreat, if possible, was erroneous, since defendant, in the defense of his person, was entitled to repel an assault by the use of such force as was necessary, irrespective of his belief that there was danger to his life, or of his suffering grievous bodily harm.

Appeal from Court of General Sessions, New York County.

Adolph Dankberg was convicted of assault in the second degree, and he appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Lewis Stuyvesant Chanler, for appellant.

Robert C. Taylor, for the People.

INGRAHAM, J. The defendant was indicted for maiming, under section 206 of the Penal Code, and, as a second count in the indictment, for assault in the second degree, under section 218 of the Penal Code. He was convicted of assault in the second degree, under the second count of the indictment, and from such conviction he appeals. The assault was alleged to have been committed upon one Kenny, who was called as a witness by the people, but whose statement of the occurrence was so contradicted by all the other witnesses called both by the people and the defendant that his testimony is not entitled to be considered.

The occurrence took place at an oyster stand on the corner of Cortlandt and West streets, in the city of New York, and the people called as a witness the proprietor of this oyster stand, who testified: That Kenny came to his stand and ordered some clams and lobsters. That the defendant came and asked for some oysters, which were supplied. That while Kenny was eating the clams he had a dispute with some other persons, and one of these persons said something to Kenny, when, as the witness said, Kenny "got wild." He pushed one man away from him, and the defendant then took hold of Kenny, whereupon the witness went between them and separated them. That the defendant then went away, and shortly after returned, took his cane, and apparently went back to the curb. That the complainant went to the curb after the defendant, and the defendant then struck the complainant with the cane. That, as he struck the complainant, the cane broke in three pieces. Upon cross-examination the witness said that he saw the defendant pushing Kenny around the stand, talking to him in German and English; that the witness went between them and separated them; that Kenny was making fun of the defendant eating oysters at the stand; that he saw Kenny then pushing the defendant away from him, and said: "Let me go. What do you want of me?" Another witness called by the people testified that Kenny was at the stand eating clams, and that while there the defendant came for some oysters; that there were three other persons at the stand, and Kenny started to talk to them; that when Kenny got through with these people he came again to the stand; that the oysterman then came out from behind the stand to make Kenny go away; that the defendant then spoke to Kenny, who pushed the defendant, and the defendant ran outside to the sidewalk; that Kenny then followed the defendant out, and commenced pushing him again, and after that the defendant hit the complainant with the cane; that, before the defendant struck Kenny, Kenny did not hit him, but pushed him. Upon cross-examination the witness testified that Kenny pushed the defendant along the street outside of the stand before the defendant struck him; that the defendant ran outside to the sidewalk, and Kenny followed him out; that after this the defend-

ant went to the police station, complained that he had lost his cane, and wished the help of the police in finding it. Upon the part of the defendant, two persons who were present and saw the affray testified. The account of these two witnesses tended to show an assault by Kenny upon the defendant. One witness (O'Neil) testified that, as he was standing in the door, Kenny came up and struck him twice in the stomach with his fist; that Kenny then pushed the defendant into the street with his shoulder, and afterwards came back, with his eye injured; that Kenny pushed the defendant about 20 feet or more across the street, into West street. Another witness testified that he saw the defendant eating oysters at the stand; that Kenny came and ordered some lobsters; that he then turned around, and pushed or forced O'Neil into the doorway; that he then came back to the stand, and commenced to take some of the defendant's oysters; that, when the defendant objected, Kenny, as described by the witness, "kept forcing Mr. Dankberg as though he was playing football—using football tactics and forcing him out into the street with his shoulder"; that when he forced him into the street he tried to get the cane away from the defendant, at the same time pushing him in the street for about 15 or 20 feet; that, with that, the oysterman came upon the sidewalk, and tried to give Kenny his lobsters in a bag; that Kenny kept on pushing against the defendant, and finally the defendant struck him with the cane; that Kenny kept shoving the defendant with his shoulder, and was then under the influence of liquor. Upon cross-examination he testified that Kenny kept pushing the defendant until the defendant struck him with the cane; that the cane was a small wooden stick, with a silver handle, and when it struck the complainant it broke in three pieces. The defendant testified that, as he was eating his oysters, Kenny was standing by his side at the counter; that while standing there he turned around and struck O'Neil; that he then turned on the defendant, and tried to take his cane, and then started pushing the defendant out into the street, followed him, pushing him, and finally said, "I will kill you," whereupon the defendant struck him with the cane on the head; that the defendant had no other idea when he struck the complainant, except to get rid of him; that after the affray the defendant went to the police station and asked the officer to endeavor to find the handle of the cane, which had been lost in the scuffle. Upon cross-examination the defendant said that the trouble commenced by the complainant's reaching over to take one of his oysters; that that irritated the defendant, who took the complainant by the coat and asked him to behave like a gentleman.

Taking this testimony as a whole, it is quite evident that Kenny was the aggressor; first interfering with the defendant—pushing him away from the stand into the street—without provocation. Kenny's story is contradicted by all the witnesses, including those called for the prosecution. The blow was struck with a small walking cane, and the serious result that followed was plainly caused by the breaking of the cane, and it could not be found from this evidence that the defendant intended to seriously injure Kenny; and, if he was at the time pushing the defendant, the defendant was justified in using sufficient force to repel the attack. Where a man takes the life of another, he is guilty of homicide, unless he establishes that it was justifiable, within sections 204

and 205 of the Penal Code; but a person who is assaulted or interfered with by another, without provocation, has a right to use sufficient force to repel the attack, without being guilty of an assault. It seems to me that the real merits of this case have been somewhat obscured by the unfortunate result of the blow, but the guilt of the defendant must depend, not upon the result of the blow, but upon the condition that existed when the blow was struck. It cannot be claimed that this cane was a dangerous weapon. All of these witnesses, except Kenny, agree that Kenny followed the defendant, and, in the altercation that followed, was the aggressor. Considering all the testimony, I am satisfied that this conviction was not based upon a preponderance of evidence, and that the jury must in some way have misconceived the right of the defendant to protect himself.

The learned trial court, after calling the attention of the jury to the definition of the two crimes of maiming and assault, said to the jury:

"'Self-defense' means that when a person believes that his life is in danger, or believes that he is in imminent danger of grievous bodily harm, he has a right to defend himself. The law also says that a person, in defending himself, must use no more force than is actually necessary. He must, if he can, avoid the quarrel. In other words, if he can run away, it is his duty to do so. While that may not be popular with men when they are assaulted, yet that is the law of our state."

While this charge was not excepted to, it stated a proposition of law which was applicable when a homicide had been committed, and not to the right of a person to defend himself when the defense does not consist of the taking of human life. I take it that a person who is assaulted by another without provocation has a right to use sufficient force to repel the assault, without running away, or believing that his life is in danger, or that he is in imminent danger of grievous bodily harm. In the defense of his person or property, irrespective of the belief that there is danger to his life or of grievous bodily harm, a person has a right to repel an assault, and use the necessary force for that purpose. He must see to it that he does not take life, except in a last extremity; and, if he does, to escape responsibility, he must prove that the taking of life was justifiable. But it is not the law that a person in a public street or public place is bound to submit to insults or indignities, followed by an assault, although neither his life nor bodily harm is seriously threatened, without resorting to sufficient force to repel the assault; and this is the rule stated in subdivision 3 of section 223 of the Penal Code. Assuming that the witnesses for the people, other than the complainant, gave a true account of this affray, it is quite evident that this defendant did nothing but what any one would be justified in doing to repel an interference with his person, and the jury must have been misled by the statement of the learned trial judge, in understanding that the defendant was guilty because, when the complainant pushed him into the street, he did not run away.

Considering the testimony and the charge of the court, we think the ends of justice require that this conviction should be set aside, and that the defendant should have a new trial. All concur.