## STATE *vs.* ENOCH BROOKS.

1. HOMICIDE—WITNESSES—DYING DECLARATIONS—ADMISSIBILITY.

   A statement claimed by the prosecuting attorney to have been made to him by decedent and reduced to writing by the prosecuting attorney, but not signed nor sworn to by decedent, may be used by the prosecuting attorney to refresh his recollection in testifying to what decedent told him; but the instrument is not admissible as a dying declaration, though the prosecuting attorney testifies that the statement was read to decedent and he stated that it was correct.

2. HOMICIDE—MURDER—ELEMENTS.

   Malice is an essential element of murder in the first or second degree.

3. HOMICIDE—"MALICE".

   "Malice", in homicide, is a condition of the mind or heart, and is not restricted to spite or malevolence toward decedent, and includes that general malignity and reckless disregard of human life which proceed from a heart fatally bent on mischief.

4. HOMICIDE—MALICE—PRESUMPTION.

   A homicide committed deliberately or without adequate cause is presumed to have been malicious, and the burden is on accused to show from the evidence, or by inference from the circumstances of the case, that the act was not malicious.

5.  HOMICIDE—MALICE—EVIDENCE.

Malice, in homicide, is implied from every unlawful and cruel act committed by one person against another; and when a killing is shown to have been done with a deadly weapon, it is presumed to have been done maliciously.

6.  HOMICIDE—"DEADLY WEAPON".

A "deadly weapon" is a weapon likely to produce death.

7.  HOMICIDE—"MURDER IN THE FIRST DEGREE".

A homicide committed with express malice aforethought is "murder in the first degree".

8.  HOMICIDE—"EXPRESS MALICE AFORETHOUGHT".

"Express malice aforethought" exists only when one person kills another with a sedate, deliberate mind and formed design, evidenced by lying in wait for decedent, or by antecedent menaces or threats that disclose a purpose on the part of the prisoner to commit the act charged, or by a former grudge, ill will, spite, hatred, or malevolence toward decedent, or by any other circumstances disclosing a guilty purpose.

9.  HOMICIDE—DELIBERATION—EVIDENCE.

Deliberate selection and use of a deadly weapon is a circumstance which, in the absence of satisfactory evidence to the contrary, indicates the existence in accused's mind of a deliberate formed design to kill.

10.  HOMICIDE—MALICE AFORETHOUGHT—PRESUMPTIONS.

One using a deadly weapon is presumed to have intended to inflict the natural and probable consequences of his act.

11.  HOMICIDE—DELIBERATION.

If accused deliberately intended to kill decedent, the length of time that such intention existed is immaterial, and the killing is murder, unless committed in lawful self-defense.

12.  HOMICIDE—"MURDER IN THE SECOND DEGREE".

Killing with implied malice constitutes "murder in the second degree"; that is, where the malice is not express, as in murder in the first degree, but is an inference or conclusion of law from facts proved, where there is no deliberate mind and formed design to take life, but where the killing is done without justification or excuse, and without provocation, or without sufficient provocation to reduce the offense to manslaughter.

13.  HOMICIDE—"MANSLAUGHTER".

The unlawful killing of another without malice is "manslaughter" as where one kills another in a sudden quarrel, in the heat of blood, or in a transport of passion, without malice, inflicts a mortal wound, without time for reflection or for the passions to cool; but to reduce the offense to manslaughter the provocation must be very great, so great as to produce such a transport of passion as to render the person for the time being deaf to the voice of reason.

14.  HOMICIDE—SELF-DEFENSE—BURDEN OF PROOF.

The burden of establishing self-defense to the satisfaction of the jury rests on accused.

**15. Assault and Battery—Provocation—Looks and Gestures.**

No looks or gestures, however insulting, and no words, however opprobrious or offensive, can amount to a provocation sufficient to excuse or justify an assault.

**16. Assault and Battery—Repelling Assault—Degree of Force.**

In resisting an assault, no more force may be used than is necessary for the purpose; use of greater force making the user the aggressor.

**17. Homicide—Self-Defense—Aggression—Duty to Retreat.**

Though decedent first attacked accused, and the attack was of such a character as to create in accused's mind a reasonable belief that he was in danger of death or great bodily harm, accused was bound to retreat if he could safely do so, or use such other reasonable means as were within his power to avoid killing decedent.

**18. Assault and Battery—Self-Defense—Degree of Force.**

In protecting one's self against assault and injury, one need not wait until struck by an impending blow, and if the weapon be raised in order to shoot or strike, or the danger of other personal violence be imminent, one may protect himself by striking the first blow for the purpose of repelling the attempted injury; but the opposing force or measure of defense must not be unreasonably disproportionate to the requirements of the occasion.

**19. Homicide—Self-Defense—Right to Act.**

Where one is assaulted upon a sudden affray, and honestly believes on reasonable and sufficient grounds that he is in imminent danger of being killed or of receiving great bodily harm, he is entitled to use a deadly weapon against his assailant; but in exercising such right in a manner likely to cause death or great bodily harm to his assailant, he must be closely pressed, and must have retreated as far as he conveniently and safely can in good faith, with the honest intent to avoid the violence and peril of the assault.

**20. Homicide—Self-Defense—Elements—Decedent's Reputation.**

On a plea of self-defense, in determining whether accused acted in reasonable fear of decedent, the jury may consider decedent's conduct just before the homicide, the violence of his assault, the kind of weapon he employed, if any, his superior advantage of size and strength, as well as accused's knowledge of decedent's reputation for being a quarrelsome and violent man.

**21. Homicide—Dying Declarations—Weight.**

A declaration made in view of death is entitled to as high a degree of credit as a statement made on oath under ordinary circumstances.

**22. Criminal Law—Evidence—Accused's Good Character—Weight·**

In a murder trial, accused's good character, when proved, is to be taken into consideration in connection with all the other evidence in the case, and is to be given such weight under all the facts and circumstances as the jury deem it entitled to.

**23. Criminal Law—Proof Required—Reasonable Doubt.**

Accused is presumed to be innocent until every element of the crime charged has been proved to the satisfaction of the jury beyond a reasonable doubt.

24. CRIMINAL LAW—"REASONABLE DOUBT".

"Reasonable doubt" as to accused's guilt, upon which he is entitled to an acquittal, does not mean a vague, speculative, or whimsical doubt, nor a mere possible doubt, but a substantial doubt, such a doubt as intelligent, reasonable and impartial men may honestly entertain after a careful examination and conscientious consideration of all the evidence.

(*February* 28, 1912.)

PENNEWILL, C. J., and BOYCE and CONRAD, J. J., sitting.

*Josiah O. Wolcott* and *W. Watson Harrington*, Deputy Attorneys General, for the state.

*Arley B. Magee* for the prisoner.

Court of Oyer and Terminer, in and for Kent County, beginning February 27, 1912.

INDICTMENT FOR MURDER IN THE FIRST DEGREE.

[1] At the trial, the Deputy Attorney General proved by a witness that, at the latter's suggestion, when the defendant's victim realized that he was mortally wounded and could not recover and only four or five days before his death, he dictated to the witness a statement which the witness wrote down and read to the wounded man, who stated that the statement was correct. The Deputy Attorney General then offered the paper containing said statement in evidence as a dying declaration. Counsel for the prisoner objected because the paper was not signed nor sworn to by the decedent.

The court, through Chief Justice Pennewill, held that while the paper could be used by the witness to refresh his recollection as to what the decedent said and that said witness could testify to the statement as a dying declaration, yet the paper itself not being signed nor sworn to by the decedent, was not admissible as a dying declaration.

The facts appear in the charge of the court.

The state requested the usual instructions to the jury applicable to the facts of the case.

DEFENDANT'S PRAYERS.

That the court define murder of the first and second degree,

and manslaughter, also charge the jury as to justifiable homicide, or the law of self-defense.

That if the jury are satisfied from the evidence that the deceased first attacked the prisoner, and from the character of such attack the prisoner had reasonable cause to believe, and did believe, that he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the deceased was a justifiable act of self-defense, and the prisoner should be acquitted. *State v. Wiggins*, 7 *Penn.* 127, 132.

That if the jury find that the deceased did first attack the prisoner, and that in addition thereto they find that the deceased had a reputation for ferocity and violence, known to the prisoner, at the time of the shooting, then such a reputation is a proper subject for the consideration of the jury in connection with the character of the attack, in determining whether or not the deceased, by his acts, created in the mind of the prisoner, at the time of the shooting, a reasonable belief that he was in danger of death or great bodily harm. *State v. Wiggins*, 7 *Penn.* 127, 132, 133.

That if the jury find that the circumstances were sufficient to excite the fears of a reasonable person, and that the prisoner really acted under their influence and not in a spirit of revenge, believing that he was in imminent danger of death or great bodily harm, and that he had no other reasonable means of avoiding or preventing death or great bodily harm, the prisoner should be acquitted. *Blair v. State*, 69 *Ark.* 558; *State v. Miller, (Oregon)* 77 *Pac.* 660; *Crews v. People*, 120 *Ill.* 37.

The law considers that men, when threatened with imminent danger or great bodily harm, are obliged to judge from appearances, and determine therefrom as to the actual state of things surrounding them and in such case if persons act from honest convictions induced by reasonable evidence they will not be held responsible criminally, for a mistake as to the extent of the actual danger. *McDonal v. Repole*, 168 *Ill.* 93; *Francis v. State (Tex. Crim. App.)* 70 *S. W.* 75; *Lawler v. People*, 174 *Ill.* 230.

The general reputation of the deceased as to violence in the community in which he lived is a proper matter for the consideration of the jury, and they should give it such weight as they deem

proper under the evidence, in determining whether or not the deceased, by his acts at the time of the shooting, gave the prisoner reasonable cause to apprehend such danger as to justify his acts of killing on the ground of self-defense. *State v. Van Sant,* 80 *Mo.* 70.

The effect of evidence of the general reputation of the prisoner, in the community in which he lives for peace, good order and general observance of the law.

The accused is presumed to be innocent until his guilt, including every essential element necessary to constitute the crime charged, is proven to the satisfaction of the jury, beyond a reasonable doubt, and if such a doubt remains in the mind of the jury after considering all the evidence, such a doubt inures to the benefit of the prisoner.

That under the indictment the jury may find the prisoner guilty of murder in the first degree, murder in the second degree, manslaughter, or the jury may acquit the prisoner.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—Enoch Brooks, the prisoner, is charged in this indictment with the murder of George Cooper. It is charged by the state that the prisoner on the night of November 4, 1911, at a place near Blackiston Cross Roads, in this county, called the Old House, or Tile Yard, without any justification, cause or excuse, shot George Cooper three times, and that as the result of one of those shots he, the said Cooper, died a few days afterwards in a hospital in Philadelphia where he had been taken for treatment.

The prisoner does not deny that he shot the deceased, or that he inflicted the fatal wound; but he claims that he fired the fatal shot in defense of his life, or to escape great bodily harm, from an imminent assault which he believed the deceased was about to commit upon him with a revolver, and from which the prisoner claims he could not escape.

[2-4] Inasmuch as the prisoner is charged with murder of the first degree, it is necessary for the court to define and explain

to you, as clearly as we can, the two degrees of murder as well as manslaughter.

But we will say, first, that malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder either of the first or of the second degree. Malice is a condition of the mind or heart, and as here used the term is not restricted to spite or malevolence toward the particular person slain, but also includes that general malignity and reckless disregard of human life which proceed from a heart void of a just sense of social duty and fatally bent on mischief. Whenever the fatal act is done deliberately, or without adequate cause, the law presumes that it was done with malice, and the burden is on the prisoner to show from the evidence, or by inference from the circumstances of the case, that the act was not done with malice.

[5, 6] Malice is implied by law from every unlawful and cruel act committed by one person against another, for the law considers that he who does an unlawful and cruel act voluntarily does it maliciously. When the killing is shown to have been done with a deadly weapon, that is, with a weapon likely to produce death, it is presumed to have been done maliciously.

[7-11] Murder of the first degree is where the killing was done with express malice aforethought. Express malice aforethought exists when one person kills another with a sedate, deliberate mind and formed design, which formed design or purpose may be shown in many ways; as, for instance, by lying in wait for the deceased, or by antecedent menaces or threats that disclose a purpose on the part of the prisoner to commit the act charged, or by a former grudge, ill will, spite, hatred, or malevolence towards the deceased, or any other circumstances which disclose the purpose or intention of the accused toward his victim at the time when the crime was committed. The deliberate selection and use of a deadly weapon is a circumstance which, in the absence of satisfactory evidence to the contrary, indicates the existence in the mind of the person committing the act of a deliberate formed design to kill. All homicides with a deadly weapon are presumed to be malicious until the contrary appears by the evidence, and the burden of proof to the contrary lies on

the accused. Where the killing by a deadly weapon is admitted or proved, malice aforethought is presumed, in the absence of evidence to the contrary, and the burden of showing the contrary is on the accused, as the natural and probable consequences of the act are presumed by the law to have been intended by the person in using a deadly weapon. If the jury are satisfied from the evidence that the prisoner, when he killed the deceased, deliberately intended so to do, the length of time that said intention existed is immaterial, and the killing under such circumstances would be murder, unless it was committed in lawful self-defense. No specific length of time is necessary to make an act a deliberate act in contemplation of law.

[12] Murder of the second degree is where the killing was done with implied malice; that is, where the malice was not express, as in murder of the first degree, but is an inference, or conclusion of law, from the facts proved. It is where there is no deliberate mind and formed design to take life, but where the killing, nevertheless, was done without justification or excuse, and without provocation, or without sufficient provocation to reduce the offense to manslaughter. For example, where the killing was done without design and premeditation, but under the influence of a wicked and depraved heart, or with a cruel and reckless disregard of human life, the law implies malice and makes the offense murder of the second degree.

Where the homicide is proved the law presumes that it was done with malice, but it goes no further than to imply malice, and therefore the legal presumption goes no further from such fact than that it was murder of the second degree.

So you observe that malice is an essential ingredient of murder both of the first and second degree. In the one it must be express, and in the other it is implied. But the distinction between the two degrees which you will probably best appreciate and remember is this: In murder of the first degree there must be a sedate, deliberate mind and formed design to kill, although such design may have existed but for a moment; while in murder of the second degree there need not be such deliberation and design.

[13] Manslaughter is where one person unlawfully kills an-

other without malice.    For example, it is committed when one in
a sudden quarrel, in the heat of blood or in a transport of passion,
without malice, inflicts a mortal wound, without time for reflec-
tion or for the passions to cool.    In order to reduce the offense
to manslaughter the provocation must be very great; so great as to
produce such a transport of passion as to render the person, for
the time being, deaf to the voice of reason.    While murder proceeds
from a wicked and depraved heart, and is characterized by malice,
manslaughter results not from malice, but from unpremeditated
and unreflecting passion.

But, if the mortal blow is not struck, or the wound be not
given, during the conflict, nor until the party has afterwards had
time to cool and for reflection, it will not be manslaughter, but
murder of either the first or second degree, according to the pre-
meditation and deliberation with which the act may afterwards
be done, and the time which he may afterwards have to cool,
and reason to recover, from the transport of passion occasioned
by it.

[14]    We have been asked to charge you in respect to the law
of self-defense, and we will do so in conformity with what we
believe to be the meaning and intent of the decisions of the court
upon that subject.    The burden of establishing self-defense to the
satisfaction of the jury rests upon the accused.

[15-17]    No looks or gestures, however insulting, no words,
however opprobrious or offensive, can amount to a provocation
sufficient to excuse or justify an assault.    And in repelling or re-
sisting an assault no more force may be used than is necessary
for the purpose, and if the person assailed use in his defense
greater force than is necessary for that purpose, he becomes the
aggressor.    If the deceased first attacked the prisoner, even
though the attack was of such a character as to create in the mind
of the prisoner a reasonable belief that he was in danger of death
or great bodily harm, it was his duty to retreat, if he could safely
do so, or to use such other reasonable means as were within his
power to avoid killing his assailant.

No one may take the life of another, even in the exercise of
the right of self-defense, unless there is no other available means

of escape from death or great bodily harm.    If the jury are satisfied from the evidence that the deceased first attacked the prisoner and that from the character of such attack, the prisoner had reasonable cause to believe, and did believe, that he was in imminent danger of death or great bodily harm, and that he had no other reasonable means of avoiding or preventing death or great bodily harm, then the killing of the deceased was a justifiable act of self-defense, and the prisoner should be acquitted.

[18]    The law accords to every one the right to protect his person from assault and injury by opposing force to force, and he is not obliged to wait until he is struck by an impending blow. If a weapon be raised in order to shoot or strike, or the danger of other personal violence be imminent, the party in such imminent danger may protect himself by striking the first blow, for the purpose of repelling and preventing the attempted injury.    But the opposing force or measure of defense must not be unreasonably disproportionate to the requirements of the occasion.    Although so much force as is reasonably necessary may be used, yet if the violence used is greater than was necessary, under the circumstances, to repel the assault or avert the peril, the party using it is himself guilty of an offense.    The law recognizes the right of self-defense for the purpose of preventing, but not of revenging, an injury to the person.

[19]    Where one is assaulted upon a sudden affray and, in the judgment of the jury honestly believed, on reasonable and sufficient grounds, that he was in imminent danger of being killed or of receiving great bodily harm, he would have, in self-defense, the right to use a deadly weapon against his assailant.    But, in exercising such right, in a manner likely to cause death or great bodily harm, to his assailant, he must be closely pressed by him, and must have retreated as far as he conveniently and safely could in good faith, with the honest intent to avoid the violence and peril of the assault.    If these be so sudden, fierce or urgent as not to allow him to retreat, or to have other probable means of escape, then he may rightfully use a deadly weapon in his defense, but not otherwise.

[20]    In further justification of his act of shooting, and as an

element of his plea of self-defense, the prisoner contends that
the deceased had the reputation of possessing a quarrelsome and
violent nature, which reputation was known to the prisoner; and
he seeks to excuse the manner and promptness in which he acted
in his own defense, because of his fear arising from that knowledge,
and from the deceased's advantage in size and strength.

Upon this phase of the defense, the court follows the deci-
sions recently made in other cases, and charges you that, if you
find from the evidence that an actual assault was first made by
the deceased upon the prisoner, it is then proper and material to
the issue raised by the plea of self-defense for you to consider and
determine whether the prisoner was, at the time of the shooting,
in reasonable fear of death or of great bodily harm.

In determining what constitutes such reasonable fear, you
may consider the conduct of the deceased just before the shoot-
ing, the violence of his assault, if any, the character of the weapon
he employed, if any, his superior advantage of size and strength,
if such existed, as well as the prisoner's knowledge of his assail-
ant's reputation for being quarrelsome and violent.

[21] We have been asked by the state to charge you as to
the degree of credit to be given by you to dying declarations.

In the case of *State v. Frazier*, 1 *Houst. Cr. Cas.* 186, the court,
in speaking upon this subject, said:

"In such a situation, and in view of the death, which he, the
deceased, fully apprehends, and believes in his own mind to be
surely and inevitably approaching, and near at hand; the conscious
solemnity of the occasion, and his duty to speak the truth, and
nothing but the truth, is rightly assumed in law to invest his decla-
rations, made under such circumstances, with as high a sanction,
and as much credibility, as if made under the obligations of an
oath duly administered in a court of justice under ordinary cir-
cumstances."

[22] The good character of an accused person, when proved,
is to be taken in connection with all the other evidence in the case,
and is to be given just such weight, under all the facts and circum-
stances of the case, as in the judgment of the jury it is entitled to.

[23] In conclusion, we say that in every criminal prosecution the defendant is presumed to be innocent until his guilt is proved to the satisfaction of the jury beyond a reasonable doubt. In order to convict the prisoner it is incumbent upon the state to prove beyond such a doubt every material element or ingredient of the crime charged. If, after carefully considering and weighing all the evidence, you should entertain a reasonable doubt of the guilt of the prisoner, you should give him the benefit of such doubt, and your verdict should be not guilty.

[24] But reasonable doubt, in the legal sense, does not mean a vague, speculative or whimsical doubt, nor a mere possible doubt, but a substantial doubt, and such a doubt as intelligent, reasonable and impartial men may honestly entertain after a careful examination and conscientious consideration of all the evidence.

We may say in conclusion, if you are satisfied beyond a reasonable doubt, from the evidence, that the prisoner killed the deceased with express malice aforethought, that is, with a sedate, deliberate mind and formed design to kill, and not in lawful self-defense, your verdict should be guilty in manner and form as he stands indicted, which is murder of the first degree.

But if you are not satisfied that the prisoner is guilty of murder of the first degree, but are satisfied that he killed the deceased maliciously, without justification or excuse, that is, under the influence of a wicked and depraved heart, or with a cruel and reckless disregard of human life, your verdict should be guilty of murder of the second degree. But if you are not satisfied that the prisoner is guilty of murder either of the first or second degree. but are satisfied that he killed the deceased unlawfully, in the heat of blood, or in a transport of passion, without time for reflection or for the passions to cool, your verdict should be guilty of manslaughter.

But if you are satisfied from the evidence that the prisoner killed the deceased in necessary and lawful self-defense, your verdict should be not guilty.

Verdict, guilty of murder in the second degree.