## STATE *vs.* JOHN HARMON.

1. HOMICIDE—CAUSE OF DEATH.
    Where lockjaw, directly causing decedent's death, resulted from knife wounds inflicted by accused, death was caused by the wounds.

2. HOMICIDE—SELF-DEFENSE—THREATS BY DECEDENT.
    The jury, in determining whether accused acted in self-defense, may consider prior threats by decedent against accused, and known to him before the fatal difficulty, but may not consider any threats not. communicated to accused before that time.

3. HOMICIDE—SELF-DEFENSE—THREATS BY DECEDENT.
    Previous threats by decedent against accused will not justify an assault by the latter, unless the jury finds that he had reasonable cause to believe, and did believe, at the time, that he was in imminent danger of death or great bodily harm, and there was no reasonable means of avoiding the danger by escape or retreat.

(*January* 12, 1915.)

PENNEWILL, C. J., and BOYCE and RICE, J. J., sitting.

*Frank M. Jones*, Deputy Attorney General, for the state.

*Robert C. White* and *James M. Tunnell* for the prisoner.

At a Court of Oyer and· Terminer in and for Sussex County, beginning January 11, 1915, the prisoner, John Harmon, a colored man, was tried upon an indictment charging murder of the first degree.

The facts are stated in the charge.

Charge.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—John Harmon, the prisoner, is charged with the crime of murder of the first degree. It is contended by the state that the prisoner on the fourth day of July last in the Town of Rehoboth, in this county, without cause, justification or excuse, cut and stabbed one Thomas Rickits in a quarrel or fight resulting from a game of crap, and that as a result of said cutting Rickits died some days thereafter of tetanus or lockjaw.

[1]  We may say in this connection that if the lockjaw which it is alleged was the direct cause of Rickits' death resulted from the knife wounds inflicted by the prisoner, then the death was caused by said wounds.

The prisoner does not deny that he cut the deceased, or that he inflicted the alleged mortal wound, but he claims that he did the cutting in defense of his life, or to escape great bodily harm, from an assault which Rickits was at the time committing upon the prisoner with a knife, and from which the prisoner claims he could not escape.

(The court then defined the two degrees of murder, malice express and implied, manslaughter, and self-defense, as announced in the case of *State v. Brooks*, 3 *Boyce*, 203, 84 *Atl.* 225.)

(In respect to threats alleged to have been made by the deceased against the prisoner, the court said):

[2]  In determining whether the prisoner was acting in self-defense when he cut Rickits, you may consider any threats shown by the evidence to have been made by Rickits against the prisoner and known to the prisoner before the cutting. But you should not consider any threats that were not communicated to the prisoner before he did the cutting, because threats are admissible in evidence only on the theory that they were operating upon the mind of the prisoner and causing him to fear the deceased and apprehend injury from him at the time the prisoner used his knife.

[3]  And we may also say that no previous threats made by the deceased against the prisoner would justify the cutting by the latter unless in the judgment of the jury he had reasonable cause

to believe, and did believe, at the time he cut the deceased that he was in imminent danger of death or great bodily harm, and that there were no reasonable means of avoiding the danger by escape or retreat.

Verdict, not guilty.