## LANDRUM v. UNITED STATES.
### No. 5738.

Court of Appeals of the District of Columbia.
Argued Nov. 11, 1932.
Decided Feb. 27, 1933.

Rehearing Dénied March 18, 1933.

ROBB and VAN ORSDEL, Associate Justices, dissenting.

Frank J. Kelly and E. Russell Kelly, both of Washington, D. C., for appellant.

Leo A. Rover and James R. Kirkland, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal by a police officer of the District of Columbia convicted of assaulting a prisoner while arresting him in the city of Washington.

The appellant, Landrum, was indicted jointly with Sirola, another police officer, in an indictment of two counts charging assault with a dangerous weapon; the weapon being a wooden club charged in the first count as being held and wielded by Landrum, and in the second count by Sirola.

At the conclusion of all the evidence the district attorney elected to stand on the first count, whereupon the court directed a verdict for the defendants on the second.

The jury found Sirola not guilty under the first count, with Landrum guilty of simple assault, and upon denial of a motion for new trial he was sentenced to pay a fine of $100, from which judgment this appeal was taken.

Though several exceptions to the evidence appear in the record, none was carried into the assignments of error, which are based on exceptions to the charge of the trial judge, as failing to correctly state the law; as unduly emphasizing unfavorable points of evidence; and because "the tenor of the entire charge was unnecessarily unfavorable to the defendant."

The record shows the police officers at 2 o'clock on the morning of August 4, 1931, patrolling their beat in a motorcar; Landrum driving.

They observed two colored women walking in the rain and inquired if anything was wrong. One of the women replied to the ef-

feet that she lived in the neighborhood; that her husband was angry with her, and had locked her out of their house.

The two officers and the two women testifying to this conversation do not agree as to what was said, but as a result of it they all went to the residence of Johnson, the complaining witness, whose wife had talked with the officers; the women on foot, the officers in their car.

When they reached the Johnson house, Officer Sirola and the two women went to the front door; Mrs. Johnson ringing the bell and Landrum remaining in the car.

Shortly thereafter Landrum also went to the front door, which was opened, whereupon a fight occurred within the house, after which Johnson was carried out by the officers, taken to Casualty Hospital where his wounds were dressed, thence to the police station, thence to Gallinger Hospital, where he was kept three or four days, and thence discharged.

While the contentions of counsel and the charge of the court covered a wider field, we think the case turns on the entry to the house and what occurred immediately thereafter, upon which the evidence is contradictory and wholly irreconcilable.

In outline, Johnson testified that earlier in the evening he had scolded his wife but offered her no violence; that she voluntarily went out about midnight, taking her sister, but leaving her baby; that she returned later in the night and rang the doorbell; that he called to her to stop ringing and came downstairs in his underclothes, pulled down the door shade, and as he was about to open the door it was opened with a key from without; that Landrum entered and immediately struck him with something held in his hand; that the blow knocked him several feet, and his wife rushed between; that he then asked the officers why they entered his house, picked up a stick like an axe handle, stomped it on the floor, and ordered the officers out of his house, but did not strike, or attempt to strike, either of them; that he was bleeding from Landrum's first blow, but that Landrum wrested the stick from him and beat him with it as he retreated upstairs; that both officers struck him; that he finally lost consciousness; and that he had no clear recollection of further occurrences until the next morning in the hospital.

Mrs. Johnson testified that Landrum remained in the car in front of the house until he saw her husband pull down the door shade, when he came up to the house saying, "Did you see that nigger pull down that shade?" opened the door with a key; went in and asked her husband "What in the hell is wrong with you, boy?" and struck him with something he held in his hand; that she asked Landrum not to strike again; that her husband got the stick and stomped the floor with it saying "You have to get out of my house because you have no warrant"; that Sirola told Landrum not to strike, but to let the man explain; that Landrum took the stick away from her husband and struck him again, whereupon she rushed from the house, and when she returned in five minutes the men were fighting on the stairs and shortly thereafter she saw the officers carry her husband to their car bleeding and apparently lifeless. She saw him the next morning in the hospital, and when he returned home three days later his head was bandaged and his back bruised.

Her sister testified to the same effect, except that she left the house before the fighting began and stayed out until she saw the officers carry Johnson to their car apparently lifeless.

Officer Landrum testified that Mrs. Johnson told them before they went to the house that her husband had beaten her, locked her out of the house in the rain, and that she wanted them to go and get him, which they refused to do without a warrant.

Thereupon Mrs. Johnson said her husband had been gassed overseas, that he was half crazy, was then drinking, and that he would injure himself or any one else that might go to the house, whereupon they all went to the house together and rang the bell.

Thereupon Johnson looked out the door, said the "damn rat has brought the police," pulled down the shade, and walked away.

That Mrs. Johnson then asked the officers to open the door, which he did with a skeleton key, whereupon Johnson grabbed his wife, pulled her behind him, and immediately struck at Landrum with his fist, Landrum returning the blow with his open hand, whereupon Johnson struck Landrum on the shoulder with the club, tearing off his badge, thereupon a struggle ensued for the possession of the club, which continued upon the stairs; Landrum trying to protect himself from the club and striking Johnson with his baton several times, until Johnson was finally knocked out by a blow on the chin from Sirola's fist. Thereupon Johnson and Landrum tumbled down the stairs together, and they carried Johnson to the hospital.

Officer Sirola testified to substantially the same effect as Landrum.

The medical testimony shows multiple lacerations of Johnson's scalp, nine stitches being taken therein; and it tends to show a fracture of the skull and a continuing cerebral irritation.

Upon this testimony we are of opinion that if, as the officers assert, Mrs. Johnson invited them to open the door of her house, where she was living with her family, and where her husband and baby then were, the officers were legally entitled to do so.

And if they were met at the threshold by the husband, who immediately grabbed his wife, pushed her behind him, and assaulted the officers, they were entitled to use such force as was reasonably necessary to repel that assault, Blankenship v. State, 11 Ala. App. 125, 65 So. 860; State v. Brooks, 26 Del. (3 Boyce) 203, 84 A. 225; State v. Carver, 89 Me. 74, 35 A. 1030; People v. Pagnotta, 144 App. Div. 265, 128 N. Y. S. 1061; People v. Dankberg, 91 App. Div. 67, 86 N. Y. S. 423; and to arrest the assailant, U. S. v. Fullhart (C. C.) 47 F. 802; Gillespie v. State, 69 Ark. 573, 64 S. W. 947; Moody v. State, 120 Ga. 868, 48 S. E. 340; State v. Krakus, 5 Boyce (Del.) 326, 93 A. 554; Petit v. Colmery, 4 Pennewill (20 Del.) 266, 55 A. 344.

In this respect the charge of the court said:

"But if you should find beyond a reasonable doubt that he (Landrum) did strike Johnson with the wooden club, then there are other things to consider. Did he under the circumstances strike in self-defense. He says, and I think Mr. Sirola also says, that with the wooden club Johnson threatened and attempted to strike Landrum, and that it was in the necessary scuffle of Landrum to protect himself from the blows of that club that Johnson was disarmed of his club and struck with the baton.

"If that occurred, was there an honest belief in Landrum's mind that he was in danger of death or serious bodily harm; and if so, would that be a reasonable belief under the circumstances? And if so, did he use only such force as was necessary to resist this alleged assault by Johnson?

"In determining that question of course you will have in mind what the defendants themselves say. They say that Landrum did not strike Johnson at all with the club, nor did he threaten to do so. Then, too, you will consider this question: Did Johnson have the right, I mean assuming the defendants' contention or assuming the matter from the viewpoint of the defendants' position, did Johnson have a right to threaten or menace him with the club.

"Now, that was Johnson's home. That is undisputed. He was in his own home. He was in there at that hour of the night. And unless he did commit a felony of which these defendants knew, and they had probable cause to know that he did commit it, or unless Johnson was actually committing a breach of the peace in their presence, within the actual knowledge of these officers, then they had no right to go in that home unless, as they claim, they were invited in there. * * * The next question is, whether there was an actual breach of the peace in their presence which caused them to go into the home. You will consider all the facts concerning that. I will not take the time to review the facts. It is doubtless clearer in your minds than in mine.

"But get a true picture of the situation: Was there an actual disturbance or a breach of the peace committed there in their presence, at the home, before they entered the house. If there was not they had no right to enter, unless, as I say, they had been invited in there; and I shall not be technical in my instruction on that. I think it is fair to say under the circumstances of this case that if they were invited into the home by the wife, that would be a sufficient invitation to justify them in going there.

"Of course on that question, of whether they were invited in or whether there was any reason for them to go in, you will again get the truth of the matter, the real picture. Mrs. Johnson, according to their story, wanted to get into her home. When they got down there to the porch the door was opened. So in analyzing the case from the viewpoint of the defendants it would seem that her object had been accomplished, and it finally reduces itself to this question: What was the conduct of Johnson at the time? Did he commit a breach of the peace? Did he act so as to indicate that he was about to commit a felony which reasonably called upon them to prevent it?

"Now, all these things you will consider carefully and say whether they had any right to go into the house, any lawful right. If they did not have but still they went in, then Johnson as the master of that house had the right to order them out. They had no more right there than you or I or any other private citizen in his home, unless it was by reason of one or other of these circumstances which I have suggested.

"Johnson having that right, he had the right to use such reasonable force as might be necessary under the circumstances to eject a trespasser, whether it be a police officer or any other person. And if that is true, and the circumstances were such as reasonably suggested and justified in your opinion the use of the club, then he had the right to use it. They had no right to resist his command that they leave his home, and if they did resist he had the right to use, reasonably, sufficient force to enforce his command."

When the judge's instructions had been given to the jury, counsel for the appellant took an exception to the entire charge, upon which the judge further explained his views, saying, among other things:

"Now as to my references bearing upon the right of the defendants to enter the house, it is a little hard for me to recall my words on that point, but I think I have given you to understand, and if not I now do give you to understand, that if there was an actual breach of the peace committed in the presence of these defendants which in the reasonable exercise of their duty to stop that breach or to arrest the offender required them to enter the house, then they had a lawful right to do so. Counsel has referred to the fact that that relates particularly to the contention of the defendants that this man Johnson did assault his wife by grabbing at her and pulling her into the house. That is correct, is it not, Mr. Kelly?

"Mr. Kelly. Yes, sir, your honor, that is particularly what I had reference to.

"The Court. You will have that in mind and determine whether it is true or not, and if it is true, of course they had a right to enter and prevent any further injury to the wife, and to arrest the man for having committed an assault upon the wife."

At the conclusion of this further instruction, counsel took no further exception, but we have considered the entire charge with care, and while on this occasion the learned judge did not achieve his usual lucidity of statement, he covered the entire field of contention with fairness to both sides.

The defendants pleaded not guilty; their testimony finally rested their case on Mrs. Johnson's invitation to enter the house and what immediately followed therefrom; and the court correctly charged upon that subject.

And in dealing with this irreconcilable testimony the jury rejected the officers' statement of the matter and accepted the contrary statement of the prosecuting witnesses.

We find ample evidence in the record to support the verdict, if it is believed.

The jury did believe it, and the trial judge, having seen and heard the whole controversy and all the participants therein, declined to disturb the verdict.

The remaining assignment of error, based upon the denial of the motion for a new trial, must, of course, fail in this court, as such a ruling lies wholly within the discretion of the trial judge.

Addington v. United States, 165 U. S. 185, 17 S. Ct. 288, 41 L. Ed. 679; Smith v. Mississippi, 162 U. S. 592, 16 S. Ct. 900, 40 L. Ed. 1082; Blitz v. United States, 153 U. S. 308, 14 S. Ct. 924, 38 L. Ed. 725; Price v. United States, 14 App. D. C. 391; West v. United States, 20 App. D. C. 351. Our conclusion is that the judgment appealed from should be affirmed, and it is so ordered.

Affirmed.

ROBB and VAN ORSDEL, Associate Justices, dissent.