## BLITZ *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 1102.    Argued April 13, 1894. — Decided April 30, 1894.

B. having been indicted under Rev. Stat. § 5511 for voting more than once at the same election for a Representative in Congress, a special deputy of the marshal swore at the trial that he saw B. vote twice at the poll. On cross-examination he was asked why he did not arrest B. when he saw that he had thus voted. The question, being objected to, was excluded.    *Held,* that it was irrelevant and was properly excluded.

The refusal by a Federal court to grant a new trial cannot be reviewed on a writ of error.

An indictment under Rev. Stat. § 5511 for knowingly personating and voting under the name of another at an election at which a Representative in Congress and also state officers were to be elected, is fatally defective if it fails to clearly charge that the accused so voted for a Representative in Congress.

A count in an indictment under that section which charges that the defendant did then and there unlawfully, knowingly, and feloniously vote at said election for a candidate for the same office for Representative in the Congress of the United States, more than once, describes the offence with sufficient certainty, and the election at which it took place sufficiently by such reference to the date of it named in a previous count in the indictment.

The indictment in this case contained three counts, specifying three separate offences against Rev. Stat. § 5511. The defendant was convicted of all. A motion in arrest of judgment under the second count being entertained, he was sentenced, under the first conviction, to imprisonment for a term commencing on a day named, and under the third conviction to a further term, commencing on the expiration of the first term.

This court, holding the first count in the indictment to be fatally defective, and sustaining the arrest of judgment under the second count, directs that the term of imprisonment under the third count shall be held to commence on the day named for the commencement of the first term.

THE case is stated in the opinion.

*Mr. John C. Fay* for plaintiff in error.

*Mr. Assistant Attorney General Conrad* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

By section 5511 of the Revised Statutes of the United States it is provided :

" If, at any election for Representative or Delegate in Congress, any person knowingly personates and votes, or attempts to vote, in the name of any other person, whether living, dead, or fictitious ; or votes more than once at the same election for any candidate for the same office; or votes at a place where he may not be lawfully entitled to vote; or votes without having a lawful right to vote; or does any unlawful act to secure an opportunity to vote for himself or any other person ; or by force, threat, intimidation, bribery, reward, or offer thereof, unlawfully prevents any qualified voter of any State, or of any Territory, from freely exercising the right of suffrage, or by any such means induces any voter to refuse to exercise such right, or compels, or induces, by any such means, any officer of an election in any such State or Territory to receive a vote from a person not legally qualified or entitled to vote; or interferes in any manner with any officer of such election in the discharge of his duties ; or by any such means, or other unlawful means, induces any officer of an election or

officer whose duty it is to ascertain, announce, or declare the result of any such election, or give or make any certificate, document, or evidence in relation thereto, to violate or refuse to comply with his duty or any law regulating the same; or knowingly receives the vote of any person not entitled to vote, or refuses to receive the vote of any person entitled to vote, or aids, counsels, procures, or advises any such voter, person, or officer to do any act hereby made a crime, or omit to do any duty the omission of which is hereby made a crime, or attempt to do so, he shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three years, or by both, and shall pay the costs of the prosecution."

Under this statute an indictment was found against the plaintiff in error in the District Court of the United States for the Western Division of the Western District of Missouri. That indictment was as follows:

"The grand jurors of the United States of America, duly chosen, selected, empanelled, sworn, and charged to inquire of and concerning crimes and offences in the Western District of Missouri and Western Division thereof, on their oaths present that on the 8th day of November, A.D. 1892, at Kansas City, in the county of Jackson and State of Missouri, there was then and there an election duly and in due form of law had and held for choice of Representative in the Congress of the United States, which said place aforesaid was then and there a portion of the Fifth Congressional District of Missouri.

"And the grand jurors aforesaid upon their oaths aforesaid do further find and present that at the said election one Morris Blitz did then and there unlawfully, falsely, knowingly, and feloniously personate and vote and attempt to vote in the name of another person other than his own name to these grand jurors unknown, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the United States.

"And the grand jurors upon their oaths aforesaid, in the name and by the authority of the United States, do further find and present that at said election the said Morris Blitz did

then and there, in the Western Division of the Western District of Missouri, unlawfully, falsely, knowingly, and feloniously vote at a place, to wit, at the sixth precinct in the second ward in said city, where he was not then and there lawfully entitled to vote, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the United States.

"And the grand jurors aforesaid upon their oaths aforesaid, in the name and by the authority of the United States, do further find and present that at the said election the said Morris Blitz did then and there, in the Western Division of the Western District of Missouri, unlawfully, knowingly, and feloniously vote at said election for a candidate for the same office for Representative in the Congress of the United States more than once, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the United States."

A verdict of guilty having been returned upon each count of the indictment, the defendant moved for a new trial and in arrest of judgment upon written grounds filed. The motion for a new trial was denied, and the motion in arrest of judgment was sustained as to the second count of the indictment, and overruled as to the first and third counts. Thereupon the defendant was sentenced upon the first count to imprisonment in the penitentiary for the period of one year and a day, such imprisonment to begin on the 28th day of November, 1893, — on which day the sentence was pronounced, — and, upon the third count, to imprisonment for a like period, to begin upon the expiration of the sentence upon the first count.

1. The first assignment of error relates to the refusal of the court below to permit Wachs, a witness for the prosecution, to answer a certain question propounded to him on cross-examination. Upon examination-in-chief the witness stated that he was a special deputy of the United States marshal at the general election in November, 1892; that during the whole of the day of the election he was at the voting place in precinct number six, in Kansas City, Missouri, and that he saw

Blitz, whom he had known by sight for about three years, vote twice at that poll, once in the morning about ten o'clock, and again in the afternoon between three and four o'clock. Upon cross-examination he was asked, "Why did you not arrest Blitz when you saw that he had voted?" The witness was not allowed to answer this question, and to that action of the court the defendant excepted.

The question was clearly irrelevant, and was properly excluded. The reasons, whatever they may have been, that induced the witness not to arrest the defendant when the latter voted the second time at the same election, did not throw any light upon the issue to be determined. If the object was to test the accuracy or credibility of the witness, it is quite sufficient to say that the extent to which a cross-examination may be allowed for such a purpose — especially where, as in this case, the question had no reference to any matter disclosed by the examination-in-chief — is largely subject to the sound discretion of the trial court, and the exercise of that discretion is not reviewable upon writ of error; certainly not where the question, upon its face. suggests nothing material to the inquiry whether the defendant is guilty or not guilty of the specific offence charged in the indictment.

2. The overruling of the motion for new trial is next assigned for error. We had supposed that it was well understood by the bar that the refusal of a court of the United States to grant a new trial cannot be reviewed upon writ of error. *Parsons* v. *Bedford*, 3 Pet. 433, 447 ; *Railroad Co.* v. *Fraloff*, 100 U. S. 24 ; *Wabash Railway Co.* v. *McDaniel*, 107 U. S. 454, 456.

3. The third assignment of error relates to the overruling of the motion to arrest the judgment upon the first and third counts of the indictment.

We are of opinion that this motion should have been sustained in respect to the first count. The statute makes it an offence for any person to knowingly personate and vote, or attempt to vote, in the name of another person, whether living, dead, or fictitious, at an election for Representative or Delegate in Congress. It appears in this case — and if it did

not appear, the court would judicially know — that the election referred to in the introductory part of the indictment was a general one at which voters were at liberty to vote at the same poll, by printed ballot, not only for a Representative in Congress, but for state officers, including Presidential electors. It was one election for all such officers, and the exercise of the privilege of voting was manifested by one act upon the part of the voter, namely, depositing in the ballot-box a general ballot showing, upon its face, for what officers he voted.

The first count charged that the defendant knowingly personated and voted, and attempted to vote, in the name of another person to the grand jurors unknown, at an election had and held for choice of Representative in the Congress of the United States. But that was not, except by inference, a charge that the defendant, in fact, voted for Representative in Congress. He may have voted only for state officers, and yet it could be said, not unreasonably, that he voted at an election had and held for Representative in Congress. If, in voting for a state officer at such election, he knowingly personated and voted in the name of another, it was an offence against the State, punishable alone by the State, although the general election at which he voted was one at which a Representative in Congress was chosen. The object of section 5511 was to prevent frauds that would affect the vote for Representatives in Congress, and not to bring elections for state officers under the control of the general government. It was consequently held, in *Coy's case,* that a conspiracy by unlawful means to induce the officers of election, appointed by the State, to omit the duty imposed upon them by the state law, in respect to the custody and safe-keeping of sealed returns showing the results of an election held for both state officers *and* for Representatives in Congress, was an offence against the United States, although the only purpose of the conspirators may have been to obtain the custody of such returns for the purpose of fraudulently changing them so far as they applied to certain state officers. This court, speaking by Mr. Justice Miller, said : " The object to be

attained by these acts of Congress is to guard against the danger and the opportunity of tampering with the election returns, as well as against direct and intentional frauds upon the vote for members of that body. The law is violated whenever the evidences concerning the votes cast for that purpose are exposed or subjected in the hands of improper persons or unauthorized individuals to the opportunity for their falsification, or to the danger of such changes or forgeries as may affect that election, whether they actually do so or not, and whether the purpose of the party guilty of thus wresting them from their proper custody and exposing them to such danger might accomplish this result." Again : " The manifest purpose of both systems of legislation is to remove the ballot-box, as well as the certificates of the votes cast, from all possible opportunity of falsification, forgery, or destruction; and to say that the mere careless omission, or the want of an intention on the part of persons who are alleged to have acted feloniously in the violation of those laws, excuses them because they did not intend to violate their provisions as to all the persons voted for at such an election, although they might have intended to affect the result as regards some of them, is manifestly contrary to common sense, and is not supported by any sound authority." *In re Coy*, 127 U. S. 731, 754, 755.

It is not to be inferred from the decision in that case that section 5511 is applicable to any act or omission of duty upon the part of an officer of election, or of a voter or other person, except such act or omission of duty as affected or might affect the integrity of the election for a Representative in Congress. The conspiracy charged in that case did imperil the integrity of the vote for Representative in Congress, because the returns of the election related to Representative in Congress as well as to state officers, and were liable to be falsified if they passed, before certificates of election were issued, into the hands of unauthorized persons. But this reasoning has no application to the present case. Voting, in the name of another, for a state officer, cannot possibly affect the integrity of an election for Representative in Congress. With frauds of

that character the national government has no concern, and, therefore, an indictment under Rev. Stat. § 5511 for know ingly personating and voting under the name of another, should clearly show that the accused actually voted for a. Representative in Congress, and not simply that in voting he falsely personated another at a general election at which such Representative was or could have been chosen. In cases like the present one, it should not be left in doubt, or to mere inference, from the words of the indictment, whether the offence charged was one within Federal cognizance. *United States* v. *Morrissey*, 32 Fed. Rep. 147; *United States* v. *Seaman*, 23 Fed. Rep. 882. The general rule that an indictment for an offence purely statutory is sufficient if it pursues substantially the words of the statute, is subject to the qualification, fundamental in the law of criminal procedure, "that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defence and plead the judgment as a bar to any subsequent prosecution for the same offence." *United States* v. *Simmons*, 96 U. S. 360, 362; *United States* v. *Hess*, 124 U. S. 483, 488. As said in *United States* v. *Carll*, 105 U. S. 611, 612, it is not sufficient to set forth the offence in the words of the statute, "unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."

The want of care in framing the first count is further shown by the fact that, although voting and attempting to vote, knowingly, in the name of another, for Representative in Congress, may be distinct offences, under the statute, the indictment charges that the defendant did knowingly "personate and vote *and* attempt to vote" in the name of another person. If the attempt to so vote was immediately followed by voting, then the allegation that the accused attempted to vote was unnecessary. The first count leaves it in doubt whether it was intended to charge two distinct offences, or only the offence of voting in the name of another person. This defect alone might not have been sufficient, after verdict, as ground

for arresting the judgment on that count. But it is referred to as supporting or illustrating the rule that enjoins such certainty in an indictment as will inform the accused of the precise nature of the charge against him.

In respect to the third count of the indictment, but little need be said. It is clearly sufficient, for it charges that "at said election" the defendant voted more than once for Representative in Congress. Such double voting is made an offence by the statute. The only question that could arise upon the third count is whether the words of the first count, referring to the election had and held on the 8th day of November, 1892, for Representative in Congress, can be drawn through the second count into the third count by the words, "at the said election." As the election named in the first count is the only one specifically described in the indictment, there can be no doubt that the words "at said election" in the third count refer to the election described in the first count.

In *Commonwealth* v. *Clapp*, 16 Gray, 237, 238, where the question was as to the sufficiency of the description of the prosecutor and the defendant in the second count on which the defendant was convicted, it was held that that count could be supported by reference to the first count upon which the defendant was acquitted, the court observing that in the most approved books of forms, ancient and modern, it is found, almost invariably, when an indictment contains more than one count, that all the counts, after the first, omit the description of the defendant, which is contained and is necessary in the first, and describe him only as "the said A. B." In *Phillips* v. *Fielding*, 2 H. Bl. 123, 131, Gould, J., recalled the case of an indictment for forgery, in which there were three counts for forgery and three for the utterance; in the first count the prisoner was particularly described, and the grand jury having rejected the three first counts, an objection was raised that the remaining counts described him, "the said A. B.," by reference to the first. But all the judges, he said, held the description to be good. So, in 1 Chitty's Cr. Law, 250: "Though every count should appear upon the face of it to charge the defendant with a distinct offence, yet one

count may refer to matter in any other count so as to avoid unnecessary repetitions; as, for instance, to describe the defendant as 'the said, etc.'"; and "though the first count should be defective, or be rejected by the grand jury, this circumstance will not vitiate the residue." See also 2 Gabbett's Cr. Law, 248; *Reg.* v. *Huntley*, 8 Cox's Crim. Cas. 260; *Queen* v. *Waverton*, 17 Q. B. 562.

While repetition may be avoided by referring from one count to another, and, therefore, within the principles of the adjudged cases, a subsequent count of an indictment may be sustained, even if it refers to allegations in a previous count or counts which have been adjudged to be insufficient, the reference should be sufficiently full, in effect, "to incorporate the matter going before with that in the count in which it is made." 1 Bishop Cr. Pro. § 431; Wharton's Cr. Pl. & Pr. § 299.

As judgment was pronounced on both the first and third counts; as the term of imprisonment under the judgment on the third count was to commence from the expiration of the judgment on the first count; and as no judgment should have been pronounced upon the first count, the contention of the plaintiff is that the cause must be remanded with directions for a new trial.

In *Kite* v. *Commonwealth*, 11 Met. (Mass.) 581, 585, it appeared that the accused was sentenced for a named period to confinement at hard labor, to take effect from and after the expiration of three previous sentences specified. The judgment was objected to as erroneous and void, because there were not three former sentences, legal and valid, and, therefore, no fixed time from which the punishment on the last sentence should begin. Chief Justice Shaw, referring to this objection, and delivering the unanimous judgment of the court, said that it was not error in a judgment in a criminal case to make one term of imprisonment commence when another terminates. "It is as certain," he said, "as the nature of the case will admit, and there is no other mode in which a party may be sentenced on several convictions. Though uncertain at the time, depending upon a possible contingency that the

imprisonment on the former sentence will be remitted or shortened, it will be made certain by the event. If the previous sentence is shortened by a reversal of the judgment or a pardon, it then expires; and then, by its terms, the sentence in question takes effect as if the previous one had expired by lapse of time. Nor will it make any difference that the previous judgment is reversed for error. It is voidable only, not void; and until reversed by a judgment, it is to be deemed of full force and effect; and though erroneous and subsequently reversed on error, it is quite sufficient to fix the term at which another sentence shall take effect." See also *Dolan's Case*, 101 Mass. 219, 223.

In these views we concur. A reversal of the judgments on both the first and third counts in this case could only result in another trial upon the third count, the first count being insufficient. But as there has been a trial upon the third count, the sentence, in respect to that count, should stand, and the term of imprisonment under it be held to commence from the 28th day of November, 1893, the date fixed by the judgment below for imprisonment to begin under the sentence on the first count.

*The judgment upon the first count must be reversed, and the cause remanded with directions to arrest judgment upon that count. The judgment below, so far as it relates to the third count, is affirmed.*