UNITED STATES v. RIDGWAY et al.

(District Court, W. D. Washington, N. D.   August 8, 1912.)

Nos. 2,168, 2,169.

1. INDICTMENT AND INFORMATION (§ 99\*)—FORM—DIFFERENT COUNTS—INCLUSION BY REFERENCE.

Where an indictment contained several counts for using the post office establishment in furtherance of a lottery or similar scheme, and the first count described the scheme in full, it was sufficient that subsequent counts included a description of the scheme by reference to the first count thereof, and they were not rendered invalid because the offense described in the first count was barred by limitations.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 270, 270½;  Dec. Dig. § 99.\*]

2. POST OFFICE (§ 34\*)—OFFENSES—USE OF MAILS IN FURTHERANCE OF A LOTTERY OR SIMILAR SCHEME—STATUTES.

Criminal Code (Act March 4, 1909, c. 321, § 213, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, p. 1652]), prohibiting the use of the mails in furtherance of a lottery or similar scheme, superseded Rev. St. § 3894 (U. S. Comp. St. 1901, p. 2659), relating to the same subject.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 54;  Dec. Dig. § 34.\*]

3. INDICTMENT AND INFORMATION (§ 131\*)—OFFENSES—JOINDER—FELONY—MISDEMEANOR.

Under Rev. St. § 1024 (U. S. Comp. St. 1901, p. 720), providing that where there are several charges against any person for the same act or transaction, or for two or more acts or transactions of the same class of offenses or crimes, which may be properly joined, they may be joined in a single indictment in separate counts, charges of misuse of the mails in furtherance of a lottery or similar scheme were properly joined in a single indictment in separate counts, though some of the counts charged a misdemeanor and others a felony.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 424;  Dec. Dig. § 131.\*]

4. POST OFFICE (§ 48\*)—MISUSE OF MAILS—LOTTERY—INDICTMENT—SCIENTER.

An indictment for misuse of the mails in furtherance of a lottery or similar scheme, charging that defendants "did then and there willfully, knowingly, unlawfully, and feloniously deposit \* \* \* a certain letter and circular concerning a certain scheme" previously described, sufficiently charged that defendants knew that the letter deposited by them concerned the scheme; and, it being also alleged that defendants devised such scheme, the indictment was not objectionable for failure to allege a sufficient scienter.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80;  Dec. Dig. § 48.\*]

5. POST OFFICE (§ 48\*)—MISUSE OF MAILS—LOTTERY SCHEME—INDICTMENT.

Criminal Code (Act March 4 1909, c. 321, § 213, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, p. 1652]), prohibits the use of the mails in furtherance of a lottery or similar scheme offering prizes dependent in whole or in part on lot or chance.  *Held*, that where an indictment, after fully describing a scheme to dispose of certain lots of unequal value by means of a drawing, alleged that defendants did willfully, etc., deposit in the post office a certain letter and circular concerning such scheme which was described as one offering prizes dependent in whole or in part on lot or chance, such allegation cured a prior general averment that it was "a scheme dependent on lot or chance" as distinguished from "a

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

scheme offering prizes dependent on lot or chance" described in the statute.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. § 48.*]

6. POST OFFICE (§ 34*)—MISUSE OF MAILS—"LOTTERY OR SIMILAR SCHEME."

An indictment charging misuse of the mails in furtherance of a lottery or similar scheme charged that defendants, having acquired certain land, conceived the idea of platting it into lots of unequal value and on a certain number of the lots erecting houses, rendering the inequality greater, then selling the lots at $140 each, the particular lot secured by a purchaser, however, not to be known or identified at the time of purchase, but that, after all the lots were sold, there was to be a drawing under defendants' supervision by which the lots were to be parceled out by lot or chance to each purchaser and deeded in accordance with the drawing. *Held*, that such scheme was in all respects similar to a lottery, and that the furtherance thereof by means of letters and circulars sent through the Post Office Department constituted a violation of Criminal Code (Act March 4, 1909, c. 321, § 213, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, p. 1652]), prohibiting the use of the mails in furtherance of a lottery or similar scheme.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 54; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 5, pp. 4245–4252; vol. 8, pp. 7710–7711.

Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

W. A. Ridgway and another were indicted for using the post office in furtherance of a lottery, and they demurred to the indictment. Demurrer overruled, except as to counts 1 and 5.

W. G. McLaren, of Seattle, Wash., for the United States.
Kerr & McCord and Hammond & Hammond, all of Seattle, Wash., for defendants.

CUSHMAN, District Judge. This matter is now before the court upon demurrers to the indictments in the above numbered causes.

The first count of the indictment in cause No. 2,169 is as follows, to wit:

"That heretofore, to wit, on or about the 9th day of April, 1910, one W. A. Ridgway and one R. E. Glass, at the city of Seattle, county of King, state of Washington, within the Western District of Washington and within the jurisdiction of this court, then and there being, did then and there willfully, knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office in the United States of America, at said city of Seattle, to be sent and delivered by the post office establishment of the United States, a certain letter and circular concerning a certain scheme dependent upon lot or chance, then and there being operated and conducted within the Western District of Washington by a certain corporation called 'Jovita Heights Company,' and which said letter and circular were then and there intended for the purpose of promoting, aiding, and furthering the carrying on of the business of said scheme, and which said letter, omitting the letter head, was in words and figures as follows, * * * and which said letter and circular were contained in a certain sealed envelope, then and there addressed and directed as follows, to wit: * * *"

And which said scheme hereinbefore referred to was as follows:

"That the said W. A. Ridgway and R. E. Glass should acquire in the name of the Jovita Heights Company, a corporation, certain vacant, unimproved lands within King county, in the Western District of Washington, which they should plat and cause to be platted into lots and blocks under the name of Jovita Heights, which said lots should be of different and unequal values; and it was further a part of said scheme to build houses of different values upon twenty-four of said lots, thereby rendering said lots of more value than the other lots which were unimproved by buildings of any kind; and it was a part of said plan of said defendants to offer said lots for sale to persons throughout the United States and to enter into contracts with said purchasers, whereby said lots were to be sold to them for the sum of one hundred and forty ($140.00) dollars each, but at the time of such sale the lot or lots so purchased should not be identified, but after all of said lots were so sold and contracted to be sold, a drawing should be had by which said lots should be parceled out to each purchaser by lot and chance, which said drawing was to be conducted on said property under the supervision of said W. A. Ridgway and R. E. Glass and their agents and employés, and that, after said drawing, a deed or deeds should be issued to each purchaser conveying to him the lot or lots so drawn by him; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The other counts are of similar import, but are based upon and describe different letters and circulars as the subject-matter of the mailing. There are 11 counts in the indictment in cause No. 2,169 and 10 counts in indictment No. 2,168. The indictments not only embrace charges of violations of section 3894, R. S. (U. S. Comp. St. 1901, p. 2659), but of section 213 of the Criminal Code of 1910 (Act March 4, 1909, c. 321, 35 Stat. 1129 [U. S. Comp. St. Supp. 1911, p. 1652]). The plaintiff admits that prosecution for any offenses charged in counts 1 to 5 in indictment No. 2,168 is now barred by the statute of limitations.

[1] The first point urged in defendants' demurrer is that the only count in this indictment which sets forth and describes the "scheme" is the first count. The other counts incorporating the allegations describing the "scheme" by reference to the first count, and the first count being barred by the statute, the others fall with it. This position cannot be sustained.

"One count may refer to matter in a previous count, so as to avoid unnecessary repetition; and, if the previous count be defective or is rejected, that circumstance will not vitiate the remaining counts, if the reference be sufficiently full to incorporate the matter coming before with that in the count in which the reference is made. Blitz v. U. S., 153 U. S. 308–317 [14 Sup. Ct. 924, 38 L. Ed. 725]." Crain v. U. S., 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097–1099.

[2] It is further urged that the indictments are demurrable for the reason that there is an improper joinder of offenses, in that counts 1, 2, 5, and 7 of indictment 2,168 are under section 3894, R. S., providing a maximum imprisonment of one year, and the remainder of said counts are under section 213 of the Criminal Code, providing a maximum imprisonment of two years; it being contended that a felony and misdemeanor cannot be joined in the same indictment. Section 213 of the Criminal Code of 1910 supersedes section 3894 of the Revised Statutes. They treat of the same

offenses, to wit, using the mails in furtherance of a lottery or similar scheme. Section 213 is somewhat more comprehensive than section 3894. The offenses described are not only of the same class, but they cover the same ground.

[3] Section 1024 of the Revised Statutes (U. S. Comp. St. 1901, p. 720) provides:

"Where there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of offenses or crimes, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

See, also, 10 Encyc. Pl. & Pr. p. 550; 22 Cyc. 402, and cases cited. Supporting the text of the latter, U. S. v. Spintz is cited— (C. C.) 18 Fed. 377—in which decision it is said:

"Counts in an indictment under sections 3922 and 3924 Revised Statutes [U. S. Comp. St. 1901, p. 2683] may be properly joined under section 1024, although the former be a misdemeanor and the latter a felony."

[4] The next objection made is that there is no sufficient scienter; that it is not charged that the defendants knew that the letter deposited was concerning a "scheme" offering prizes. A demurrer was, by this court, sustained to a former indictment against these parties which charged that the defendants "did then and there willfully, knowingly, unlawfully, and feloniously deposit and cause to be deposited in the post office of the United States of America a certain sealed envelope, * * * and contained within said envelope was a letter"; the court holding that this was not a sufficient allegation that the letter was knowingly mailed. The charge in the present indictment is that the defendants "did then and there willfully, knowingly, unlawfully, and feloniously deposit * * * a certain letter and circular concerning a certain scheme." This is a sufficient charge that the defendants knew that the letter deposited by them concerned the scheme, and, as it is charged that the defendants devised this scheme, it cannot but be presumed that they knew its nature.

[5] It is further objected that the indictment falls short of charging the necessary scienter in another particular. That portion of the statute involved in this case—section 213 of the Criminal Code of 1910—condemns the sending of a letter concerning "a lottery * * * or similar scheme offering prizes, dependent in whole or in part upon lot or chance." Section 3894 reads: "Other similar enterprise offering prizes, dependent upon lot or chance." The objection is that the language does not cover the statute; that "a scheme dependent upon lot or chance" is not "a scheme offering prizes dependent upon lot or chance." If the language quoted is unaided by any other language in the indictments, the objection is good, and the indictments are defective; but the first count closes as follows: "and which said certain scheme here-

inbefore referred to was as follows: * * * " Then proceeds to describe the scheme as above set out. The counts other than the first conclude: "And which said scheme was the scheme hereinbefore described in the first count of this indictment, commencing with the words: * * * " With this express reference to the "scheme" mentioned in the last part of each count, it will be sufficient to cure the loose language used in the beginning of the count, provided the scheme described in closing the count is one "offering prizes dependent in whole or in part upon lot or chance."

This brings us to the final objection urged by the defendants, which is decisive of both questions; that is, it is contended that in the "scheme" as described no prizes are offered dependent upon lot or chance.

[6] By the indictment above quoted it is charged that the lands to be acquired by the defendants were to be platted and the lots were to be of unequal value, and upon a certain number of them houses were to be erected, rendering the inequality in value still greater. The lots were to be then sold at $140 each; but the lot secured was not to be known or identified at the time of the purchase. After all were sold, there was to be a drawing, under the supervision of the defendants, by which the lots were to be parceled out by lot or chance to each purchaser and thereafter deeded to each in accordance with the drawing. This arrangement was certainly a scheme similar in all respects to a lottery. If, in place of lots of land, there were to be taken a large number of envelopes, mostly empty, but in 24 of which money was placed and chances on the drawing of the envelopes sold at $1 a chance, the fact that it was such would be more clearly apparent; but the principle of the scheme would be the same.

It may be, as contended by counsel for defendants, that, after the purchase of lots, there is no law against the owners apportioning the property by drawing lots. Among other cases cited, as supporting the demurrer, is that of Chancy Park Land Co. v. Hart, 104 Iowa, 592, 73 N. W. 1059. In that case the court expressly pointed out that, "without a scheme or plan to distribute by chance on the part of the promoters, the vital part of the lottery was lacking." In the case at bar it is charged that there was such a scheme on the part of the promoters, the defendants, a scheme not devised after the purchase of the property in common, to identify and segregate the holdings of the owners, but a scheme devised in advance, presumably to stimulate the gambling instinct and induce the buyers to take a hazard, in hopes of a reward largely in excess of the investment.

The demurrers are overruled, save as to counts 1 to 5, above indicated.