## McCLINTOCK v. UNITED STATES.
### No. 565.

Circuit Court of Appeals, Tenth Circuit.
Aug. 13, 1932.

Clyde Taylor, of Kansas City, Mo. (James A. Reed and James E. Taylor, both of Kansas City, Mo., on the brief), for appellant.

L. E. Wyman, Asst. U. S. Atty., of Topeka, Kan. (S. M. Brewster, U. S. Atty., and Donald Little, Asst. U. S. Atty., both of Topeka, Kan., on the brief), for the United States.

Before LEWIS, and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

An indictment containing 19 counts was returned against McClintock, James E. Brady, and Arthur J. Baxter. The first eighteen counts charged violations of section 215 and the nineteenth count charged a violation of section 37, of the Penal Code (title 18, USCA §§ 338 and 88).

Brady filed an affidavit of bias and prejudice for the purpose of disqualifying the United States District Judge for the District of Kansas. On April 5, 1926, the senior Circuit Judge of the Eighth Circuit assigned Judge Merrill E. Otis of the Western District of Missouri to sit in the trial of the case. McClintock secured an order granting him a separate trial. Thereafter Richard J. Hopkins was appointed as United States District Judge for the District of Kansas, and McClintock was tried before Judge Hopkins subsequently to the effective date of the act of Congress creating the Tenth Judicial Circuit (28 USCA § 211).

Counts 8, 16, 17, and 19 were dismissed. A motion for a directed verdict was overruled. McClintock was convicted on counts 1, 2, 3, 4, 5, 6, 7, 9, 13, 14, and 15.

Count 1 charged that the defendants devised a scheme and artifice to defraud Leo A. Mergen and the Union National Bank of Beloit, Kansas (hereinafter referred to as the National Bank); that such scheme was that, in order to induce the National Bank to purchase from them certain notes and certificates of deposit, defendants would falsely represent to Mergen, cashier of the National Bank, that such notes and certificates were valid obligations, were worth their face value and would be paid when due, would deposit with said notes and certificates certain collateral to guarantee payment thereof, would falsely represent that such collateral had a value in excess of the amount of money advanced to them on such notes and certificates, would give the bank certain guaranties executed by Brady and R. N. Stout, would falsely represent that Brady and Stout were financially responsible for the amounts of such

guaranties, and would furnish to the National Bank false financial statements covering the financial worth of the makers of such notes. Count 1 further charged that defendants, for the purpose of executing such scheme, caused a letter dated February 8, 1923, addressed to Mergen and signed by McClintock, to be delivered through the United States mails to Mergen at Beloit on February 10, 1923. Such letter purported to transmit to Mergen a certificate for $5,000 issued by the Vernon State Bank (hereinafter referred to as the State Bank) payable to and endorsed by C. Davis.

Counts 2 to 18, inclusive, are substantially the same as count 1, except that they set up different letters.

Count 19 charged that on February 15, 1923, defendants entered into a conspiracy to commit the substantive offenses charged in counts 1 to 18, inclusive. The scheme set out in count 1 was incorporated into this count by reference.

■ Counsel for McClintock contend that the order of the senior Circuit Judge of the Eighth Circuit, appointing Judge Otis to try the cause, gave him exclusive jurisdiction, and that, since such order had not been revoked, Judge Hopkins was without jurisdiction. When such order was made, Kansas was a part of the original Eighth Judicial Circuit. Thereafter Congress passed an act creating the Tenth Judicial Circuit (45 Stat. 1346, title 28, USCA § 211), and Kansas became a part of the new circuit. The act contained no provision saving the jurisdiction of the judges previously assigned out of their own districts. The senior Circuit Judge of the Eighth Circuit had no authority to assign a judge in his circuit to sit in another circuit. Such an assignment could be made only by the Chief Justice of the United States. Section 17, title 28, USCA. After the creation of the Tenth Judicial Circuit, the effect of such an order was to assign Judge Otis to another circuit. It follows, we think, that the order appointing Judge Otis was ipso facto revoked by the act creating the Tenth Judicial Circuit. Under the provisions of sections 25 and 27, title 28, USCA, Judge Hopkins had jurisdiction to try the cause.

Counsel for McClintock assert that the judgment on counts 1 and 2 must be reversed for the reason that the use of the mails, therein alleged, preceded the formation of the scheme. They predicate this on the allegations of counts 1, 2, and 19. The letter set out in count 1 is dated February 8, 1923, and is alleged to have been delivered February 10, 1923. The letter quoted in count 2 is dated February 13, 1923, and is alleged to have been delivered February 14, 1923. On the other hand, count 19 alleged that defendants entered into the conspiracy, which was also the scheme to defraud (see Brady v. United States (C. C. A. 8) 24 F.(2d) 399, 404), on February 15, 1923.

■ Each count of an indictment is regarded as if it were a separate indictment and must be sufficient in itself. Dunn v. United States, 284 U. S. 390, 52 S. Ct. 189, 76 L. Ed. 356; Joyce on Indictments (2d Ed.) par. 555. One count may be bad without affecting the other counts. DeJianne v. United States (C. C. A.) 282 F. 737. However, one count may incorporate the allegations of another count by reference. Joyce, supra, par. 555; Crain v. United States, 162 U. S. 625, 16 S. Ct. 952, 40 L. Ed. 1097; Blitz v. United States, 153 U. S. 308, 14 S. Ct. 924, 38 L. Ed. 725; Doe v. United States (C. C. A.) 253 F. 903. Count 1 alleges the scheme, sets out the letter, and charges it was delivered through the mails in execution thereof. The offense is sufficiently charged in that count standing alone. The same is true of count 2, except that it incorporates by reference the allegations of the scheme charged in count 1. Count 19 alleges a conspiracy entered into on February 15, 1923, and by reference incorporates the scheme as alleged in count 1; it is to that extent controlled by the allegations of count 1. But counts 1 and 2 do not incorporate nor depend on any allegation of count 19, and are in no wise affected by the allegations of that count. We are of the opinion that the indictment is sufficient. It was so held in Brady v. United States (C. C. A. 8) 24 F.(2d) 399.

The National Bank closed in November, 1923. Mergen had been its cashier for ten years immediately prior thereto. In 1921 McClintock became attorney for the National Bank. The National Bank being in need of funds, Mergen informed McClintock that he desired to obtain time deposits. Early in 1923 McClintock introduced Brady to Mergen. Nothing was said at the time with respect to any business transactions. Later Mergen asked Brady if he knew anyone who might put money in the National Bank on time deposit; Brady replied that he did, and it was agreed between them that the National Bank would handle paper for Brady up to one-fourth of the amount he caused to be deposited in the bank, and that the transactions would be closed through McClintock's office.

On February 7, 1923, Mergen sent McClintock a draft for $5,000 payable to C. Davis accompanied by written instructions to deliver the draft to Davis upon receipt of a certificate of deposit on the State Bank for $5,000. On February 8, 1923, McClintock forwarded to Mergen the certificate with the name C. Davis endorsed thereon. Stout, a witness for the government, testified that he, Brady, and McClintock were in the latter's office when the certificate was delivered to McClintock and the draft to Brady; that Brady endorsed the name C. Davis on the certificate and Stout endorsed the same name on the draft in McClintock's presence. Brady, a witness for the government, testified that he was engaged in business in Vernon, Kansas, at the time of the transactions in question, and carried on different enterprises under the names of James E. Brady, M. M. Marsh, and C. Davis; that at Mergen's solicitation he caused deposits to be made in the National Bank; that he secured a time deposit of $20,000 at the time the certificate for $5,000 payable to C. Davis was sold to the National Bank. He denied endorsing the name C. Davis on such certificate in McClintock's presence. McClintock testified that he followed Mergen's instructions with respect to the exchange of the certificate and the draft, and he specifically denied that he saw anyone endorse the name C. Davis on the draft or certificate.

On February 27, 1923, Mergen sent McClintock a draft for $2,500 payable to Stout with instructions to deliver it to him upon receipt of a note, a collateral agreement, and a guaranty by Brady. He also requested McClintock to give his opinion of Stout. On February 28, 1923, McClintock, pursuant to letters and telephone calls, forwarded to Mergen a note signed by Stout payable to the National Bank for $2,500, together with a financial statement signed and sworn to by Stout, a guaranty of payment signed by Brady, a certificate for 10,000 shares of Suburban Utilities Company stock issued in favor of Stout and by him endorsed in blank, and a copy of a letter recommending R. M. Burgess, president of the Utilities Company. In his letter, McClintock made a report on Stout, and in part said:

"He (Stout) advises me today that some of the stock of the Suburban Utilities Company has been sold at par, and that it will be the purpose of that organization to sell a considerable portion of the treasury stock at par and none of it to be sold for less than par, during the course of the development of that business."

Stout testified that he signed the note in McClintock's office and at that time stated that if called upon to pay the note, he would not be able to do so; that Brady said, "Well, you know I will always take care of you in anything like that"; that the statements concerning him in McClintock's letter to Mergen were true, except that he did not tell McClintock the stock had sold at par. Burgess testified that when he became president of the Utilities Company he believed the company had merit.

On March 17, 1923, McClintock wrote a letter to Mergen, which in part read as follows:

"Dear Mergen: Your wire received and the business has been carried out as per the offer and your telegram. There are enclosed the following papers:

"Certificate No. 25 for 20,000 shares in Suburban Utility Company issued to R. N. Stout, dated February 19, 1923, endorsed in blank and pledge of same signed by M. M. Marsh, also note of M. M. Marsh for $2500, dated this date, made to the order of myself, due five months after date with 8% until due and 10% after due. * * *

"Two separate guarantees of the payment of said note signed by R. N. Stout and J. E. Brady.

"Two separate guarantees of a certificate of deposit, number 142, dated March 17, 1923, at Vernon, Kansas, issued on behalf of C. Davis for $5,000 payable in one month, bearing 3%, guarantee is signed by R. N. Stout and J. E. Brady."

Stout testified that he endorsed certificate number 25 and signed the guaranty of payment of the Marsh note in McClintock's office; that the guaranty of payment signed by Brady was prepared by McClintock; that, to the best of his recollection, the pledge of stock was prepared in McClintock's office and there signed "M. M. Marsh" by Brady; that he was not certain whether the Marsh note was signed before he and Brady went to McClintock's office. Brady testified that he signed the name M. M. Marsh to the note because he was carrying an account under that name in the State Bank; that Mergen had suggested the signing of two names on notes in order to comply with banking requirements; that the note indicated on its face that it was prepared at Tipton, Kansas, but that he could not recall whether he took the note to McClintock or sent it to him; and that the pledge of stock appeared to have been prepared in his office rather than in McClintock's office. McClintock testified that

at the time he believed there was a person by the name of M. M. Marsh and that the note had actually been signed by such person.

McClintock testified that he had received no benefits from any of the transactions except attorney's fees from the National Bank; that he knew of no irregular dealings and that he followed Mergen's instructions in every transaction.

Brady testified that all the arrangements with respect to the several transactions were made by Mergen and that McClintock had no connection therewith, except to act as the National Bank's representative in the exchange of papers by which such transactions were closed. Mergen corroborated Brady's testimony in this respect, and, in addition, testified that McClintock acted only as attorney for the National Bank and followed his instructions. The correspondence indicates that McClintock was acting according to instructions and solely in the capacity of attorney for the National Bank.

The record discloses other transactions but, since they do not aid the case of the government, we deem it unnecessary to consider them.

 The motion for a directed verdict presents the question of whether there was substantial evidence of McClintock's guilt to take the case to the jury. Moore v. United States (C. C. A. 10) 56 F.(2d) 794; Isbell v. United States (C. C. A. 8) 227 F. 788. The evidence against McClintock was wholly circumstantial. If it was as consistent with innocence as with guilt, the motion should have been granted. Moore v. United States, supra; Chambers v. United States (C. C. A. 8) 237 F. 513; Isbell v. United States, supra; Read v. United States (C. C. A. 8) 42 F.(2d) 636; Spalitto v. United States (C. C. A. 8) 39 F.(2d) 782.

Stout gave the only testimony which militates against McClintock, and it only casts suspicion on him. An inference of innocence can be drawn therfrom as readily as an inference of guilt, and in view of the other testimony such an inference is more logical. The testimony falls far short of proving that McClintock knew and failed to report to Mergen that Stout had endorsed the name C. Davis on the National Bank's draft for $5,000, that Brady endorsed the name C. Davis on the State Bank's certificate for $5,000, and that Brady signed the name M. M. Marsh to the Marsh note and pledge of stock. Stout did not testify that McClintock saw them sign the name C. Davis on the draft and certificate. Brady testified that he did not sign the certificate in McClintock's presence. Stout, after endorsing the draft, handed it to Brady and McClintock had no occasion to see it after it had been endorsed. The government's testimony with respect to the Marsh note and pledge of stock is uncertain. Stout testified that he was not sure where the note was signed, but that, to the best of his recollection, the pledge of stock was signed in McClintock's office. Brady stated that the note bore evidence of having been prepared at Tipton and that the pledge of stock appeared to have been prepared in his office. McClintock denied that he saw Brady affix such signatures.

McClintock's letter of February 28 to Mergen was written at the latter's solicitation. Stout admitted the letter was true in every respect, except as to that part which stated that he had told McClintock the stock of the Utilities Company had sold at par. The certificate of stock on its face bore no earmarks of fraud. It was signed by a prominent businessman as president, and it was accompanied by a copy of a letter recommending such president signed by one of the leading bankers of Kansas City, Missouri. It was not shown that one of the parties present did not make the statements attributed to Stout, nor that such statements were untrue. McClintock may have innocently misstated the name of the person making such statements.

We are of the opinion that the evidence wholly failed to establish that McClintock was a party to the scheme to defraud—that he knew of such scheme or knowingly participated in the execution thereof.

The judgment is reversed with instructions to grant McClintock a new trial.