UNITED STATES of America, Plaintiff-Appellee,

v.

Donald J. GARRISON, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Clovis N. OOLEY, Defendant-Appellant.

Nos. 12823, 12824.

United States Court of Appeals Seventh Circuit.

June 29, 1960.

Rehearing Denied Aug. 24, 1960.

See also 168 F.Supp. 622.

Henry G. Morris, St. Louis, Mo., for appellant.

Edward G. Minor, U. S. Atty., Matthew M. Corry, Asst. U. S. Atty., Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Defendants, Donald J. Garrison (alias Jack Sullivan) and Clovis N. Ooley (alias C. N. Ooley), together with Helen Ooley and J. Tom Miles, were charged in an eleven-count indictment with conspiracy and mail fraud violations. Helen Ooley and J. Tom Miles were acquitted on motion and are not parties to this appeal.

Count I of the indictment charged each defendant with conspiring under Title 18 U.S.C.A. § 371 to violate the mail fraud statute, Title 18 U.S.C.A. § 1341.

Counts II to XI, inclusive, of the indictment charged each defendant with devising and engaging in a scheme to defraud certain persons named in Count II in violation of Title 18 U.S.C.A. § 1341, and each of Counts II to XI sets forth a separate and specific instance of use of the mails to defraud by each defendant in furtherance of such scheme to defraud.

A jury found each defendant guilty on all eleven counts of the indictment, and judgment was entered accordingly. Each defendant was assessed a fine of $5,000 on Count I and was sentenced to serve three years imprisonment on each of said Counts II to XI, inclusive, the terms of imprisonment under each of said counts to run concurrently. These appeals followed: Garrison in No. 12823 and Ooley in No. 12824. We shall consider both appeals together in this opinion.

Defendants assert error arising out of the denial of their motions for judgment of acquittal because of insufficiency of the evidence to support the verdicts of the jury; insufficiency of Counts III to XI, inclusive, because of failure to allege facts constituting an offense; denial of motions for mistrial based upon a prejudicial question asked by Government counsel and an allegedly prejudicial comment by the court during the trial; rulings on evidence; and certain instructions given to the jury by the court.

Count I of the indictment alleged that in furtherance of the scheme to defraud the ten persons named therein, defendants made eleven false and fraudulent pretenses, representations and promises (setting them out in detail), knowing at the time that all such pretenses, representations and promises were false when

made; that it was the plan of the conspiracy and the intent of defendants to use the United States mails in the execution of such conspiracy; and further that twelve overt acts were committed by defendants.

Count II of the indictment sets forth all of the alleged misrepresentations charged in Count I. It further alleges that defendants knowingly placed false and misleading newspaper advertising in four newspapers named therein to induce the persons to be defrauded to contact defendants; and that defendants, for the purpose of executing the scheme to defraud, caused to be placed in the United States mail a certain letter addressed to and received by one of the ten persons alleged to have been defrauded.

Counts III to XI, inclusive, each reallege all of the allegations of the first paragraph of Count II by reference thereto; set out the newspaper allegations contained in Count II; and each alleges the use of the mails with reference to a different one of the other nine persons alleged to have been defrauded.

## I

█ Defendants contend that there was insufficient evidence to support the verdict of guilty on any count in the indictment; that the evidence adduced by the Government failed to show any conspiracy on their part to violate the mail fraud statute; and that the evidence failed to show any scheme or device to defraud anyone. After a careful examination of the record, we do not agree. On the contrary, we believe the evidence as a whole was more than sufficient to warrant the jury in returning its verdicts of guilty.

The evidence in the record establishes the following course of events. Defendants had worked as salesmen for several months prior to March, 1956, for Silver King Distributing Corporation in St. Louis, Missouri, where they sold vending machines for the automatic vending of Gillette Blue Blades (safety razor blades). They determined to go into business for themselves.

About March 26, 1956, at St. Louis, Missouri, defendants obtained from the United States Post Office Department a mailing permit for a corporation to be known as Bell Merchandising Automatically, Inc.

On April 2, 1956, defendants caused to be formed a Missouri corporation under the name of Bell Merchandising Automatically, Inc., 1183 Hodiamont Avenue, St. Louis, Missouri. Defendants were named as the principal officers of the corporation, Garrison acting as president and Ooley as vice-president. Each owned 49 shares of stock, with the remaining two shares owned by their respective wives. The primary purpose of the corporation was to deal in automatic vending machines and merchandise to be sold therefrom.

About the first of April, 1956, defendants caused advertisements to be placed in four newspapers published in the Eastern District of Wisconsin, all of which newspapers circulated through the United States mail. These newspapers were the Milwaukee *Sentinel,* Cudahy *Reminder Enterprize,* Fond du Lac *Commonwealth Reporter* and Appleton *Post Crescent.* Typical of such advertisement was the following:

"INCREASE YOUR INCOME

"PART OR FULL TIME
"DISPENSING WORLD FAMOUS
'GILLETTE' BLUE BLADES

"Reliable man or woman will be selected for this area to handle the world famous 'Gillette' blue blades through our new modern type merchandising dispensers. An unusual opportunity to secure your future. Will not interfere with your present employment. To qualify you must have . . .
* $1,498.50 CASH AVAILABLE IMMEDIATELY FOR INVENTORY
* 2 REFERENCES AND SERVICEABLE CAR
* 5 SPARE HOURS WEEKLY
* MUST BE ABLE TO START AT ONCE

This company will supervise your operations and extend financial assistance to full time if desired. This excellent opportunity is offered to a dependable person who is interested in their future. It's an all cash business, depression proof, no credit risk. Do not answer unless fully qualified for the necessary time and investment.

.INCOME STARTS IMMEDIATELY
.NO SELLING OR SOLICITING
.BUSINESS IS SET UP FOR YOU
.COMPANY SECURES ALL
LOCATIONS.

*For personal interview Write Box M 37"*

Within a few days after the publication of these advertisements, and in answer thereto, the ten persons alleged to have been defrauded responded by letter to the post office box listed. Almost immediately thereafter five of them were personally contacted by defendant Garrison, four by defendant Ooley and one by both of them. (These ten persons all testified for the Government.) Each read the advertisement and responded by mail. Each testified that when visited by one of the defendants, oral representations were made. From the sales talk given by defendants, the following general pattern of representations was made:

That Bell Merchandising Automatically, Inc., was a well-established firm and had been in business for a long time. That it had been approved by one or more of the following: St. Louis Better Business Bureau, St. Louis Chamber of Commerce, Milwaukee Better Business Bureau, Milwaukee Chamber of Commerce, Cudahy Chamber of Commerce, Fond du Lac Chamber of Commerce and the Appleton Chamber of Commerce. (This was false. The company had just started in business, and it was stipulated that none of these organizations endorsed or approved any business.)

That the company was listed in Dun and Bradstreet under the name of "Bell M.A." with a B–1 rating, indicating an annual income of $200,000. One person was told that the company had the financial standing of AT&T and another that its rating was as high as General Motors and the Bell Telephone Company. (This was false. *Another* business concern, well known in St. Louis as "Bell M.A. Co.," was listed in Dun and Bradstreet with a B–1 rating.)

That the company was controlled or financially backed by the Gillette Company and had the exclusive franchise to manufacture and distribute the dispensing machines or the exclusive right to dispense Gillette blades in vending machines, or that "you can't go wrong with a company like Gillette behind you." (This was false.)

That the prospect would be given a large, exclusive territory such as the entire city of Milwaukee or half the city of Milwaukee or similarly large territory. That the vending machines would be placed for them by a location engineer in hotels, motels, factories, well known chain drug stores and supermarkets and similar establishments. (This was false.)

That they would earn a substantial amount, ranging from $23.10 per week to $390 per month; that if sales did not exceed a varying minimum amount or earnings did not meet the estimates, the company would relocate the machines in more favorable locations; that the machines were being sold to them at cost; and that any time they wanted to quit business, the company would repurchase the machines at a price of 5 to 10% below cost. (This was false. These promises did not materialize.)

There were other oral misrepresentations made to the ten victims by defendants during the course of their sales talk following the same general pattern as above set out. We need not further burden this opinion with them.

Each of the ten persons alleged to have been defrauded testified that based upon these representations made by defendants, he entered into a written contract in which he agreed to purchase thirty vending machines at $49.95 each and 400 packages of Gillette Blue Blades at

34 cents each, making a total contract price of $1,634.50. Each further testified that upon signing the contract and paying at least a part of the contract price, he received a letter sent through the United States mail confirming the contract and acknowledging the payment made. Such letters were signed by "Jack Sullivan, Mgr." In most instances the balance of the contract price was paid after receipt of this letter.

It was abundantly shown that the invitation to participate in this enterprise was extended through the newspaper advertisements. The initial response was by letter sent through the mail to the post office box indicated, and the final confirmation was made by defendants by letter duly mailed.

An office employee of defendants testified that during April, 1956 she wrote the sale confirmation letters in question and was instructed by defendants to sign the fictitious name of "Jack Sullivan." She further testified that defendants instructed her to respond to any telephone calls for Jack Sullivan that he was out of the office and could not be reached; that Bell Merchandising Automatically, Inc. did not have a factory (as set forth in the purchase order contract); and that defendants did not manufacture their own vending machines. She further testified that she typed out the sales talk used by defendants; that this was placed on a tape recorder and was discussed by defendants; and that it had to do with the selling of the vending machines and razor blades. She did work in preparation of sales materials.

The latest expression by the Supreme Court of the United States on the question of sufficiency of evidence is to be found in Parr v. United States, 1960, 80 S.Ct. 1171, 1184. In reversing a conviction in that case, the majority did so on the ground that the mailings complained of were made "under the imperative command of duty imposed by state law" (defendants were public officials) and because the "victims" had already received the goods and services prior thereto.

That is not the situation before us in this case.

■ In the instant case the ten persons alleged to have been defrauded received the vending machines and razor blades subsequent to the mailings complained of, and the purchase order contract became final only when confirmed by mail. Such being the case, it does not come within the rule announced in Kann v. United States, 1944, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88. As stated by Mr. Justice Frankfurter in his dissent in the Parr case, 80 S.Ct. at page 1187, Kann holds that "[i]f the use of the mails occurred not as a step in but only after the consummation of the scheme, the fraud is the exclusive concern of the states."

Here the fraud was clearly proved, and the statute was enacted "with the purpose of protecting the public against all such intentional efforts to despoil, and to prevent the post office from being used to carry them into effect * * *." Durland v. United States, 1896, 161 U.S. 306, 314, 16 S.Ct. 508, 511, 40 L.Ed. 709.

As the Chief Justice stated in Pereira v. United States, 1954, 347 U.S. 1, 8–9, 74 S.Ct. 358, 362, 98 L.Ed. 435:

"The elements of the offense of mail fraud under 18 U.S.C. (Supp. V) § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme. It is not necessary that the scheme contemplate the use of the mails as an essential element. United States v. Young, 232 U.S. 155 [34 S.Ct. 303, 58 L.Ed. 548]. Here, the scheme to defraud is established, and the mailing of the check by the bank, incident to an essential part of the scheme, is established. There remains only the question whether Pereira 'caused' the mailing. That question is easily answered. Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even

though not actually intended, then he 'causes' the mails to be used. United States v. Kenofskey, 243 U.S. 440 [37 S.Ct. 438, 61 L.Ed. 836]."

It is quite clear to us that the evidence of conspiracy and mail fraud was more than sufficient to warrant the jury in returning the verdicts of guilty. We hold that the trial court did not err in denying defendants' motions for acquittal.

## II

■ Defendants contend that Counts III to XI, inclusive, of the indictment fail to allege facts constituting an offense against the laws of the United States. They complain of the insufficiency of the following reference in each of such counts:

"1. The Grand Jury realleges all of the allegations of the first paragraph of Count II of this indictment."

The allegations in the first paragraph of Count II charge the scheme to defraud the ten named persons and set out in particular the eleven false and fraudulent representations made to further such scheme. Defendants charge that this incorporation by reference is so incomplete, uncertain and indefinite that it cannot be clearly determined just what was intended by this reference.

We have examined the first paragraph of Count II and find no ambiguity in its contents or uncertainty as to the material intended to be encompassed in this reference.

Rule 7 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., concerns the indictment in criminal proceedings. Express authority for this method of pleading is found in subsection (c) in the following pertinent language:

"(c) Nature and Contents. The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * Allegations made in one count may be incorporated by reference in another count. * * *"

This form of pleading was used in the Parr case, supra. The courts have given approval where the reference is sufficiently full to incorporate the matter going before with that in the count in which it is made. Blitz v. United States, 1894, 153 U.S. 308, 317, 14 S.Ct. 924, 38 L.Ed. 725. This may be properly done to avoid unnecessary repetition. Crain v. United States, 1896, 162 U.S. 625, 633, 16 S.Ct. 952, 40 L.Ed. 1097.

This court gave approval to this method of incorporation by reference in United States v. Bowcott, 7 Cir., 1948, 170 F.2d 173, 176, certiorari denied 335 U.S. 911, 69 S.Ct. 482, 93 L.Ed. 444, where we said:

"As this court held in Linn v. United States, 7 Cir., 234 F. 543, 545, 'It is well settled that it is not necessary in each count of an indictment to restate the scheme or artifice to defraud, which has been duly set forth in another count, but that apt reference in the counts * * * to the scheme as it is so set forth in another count, is sufficient and proper.'"

Having found no ambiguity or uncertainty in this reference, we hold that Counts III to XI, inclusive, allege facts sufficient to constitute an offense against the United States.

## III

■ Defendants charge reversible error in the denial of their motions for a mistrial following an allegedly prejudicial and inflammatory question propounded by Government counsel.

Defendant Garrison, while testifying on his own behalf, on direct examination made reference to and identified a newspaper article in the *Wall Street Journal* relating to the vending machine business. The article made reference to one "Arthur Schaeffer." On cross-examination by Government counsel defendant testified that he did not know Arthur Schaeffer personally, and was then asked, "State whether or not you know Arthur Schaeffer was just recently indicted and convicted in St. Louis?"

Before the question could be answered, the trial court promptly sustained an objection to the question and immediately instructed the jury to disregard it. The court denied a motion for mistrial. A short time later during the continuation of the cross-examination, the court, *sua sponte*, again admonished the jury to disregard the question and explained why it was unrelated to the matter on trial.

Obviously, this was an improper question. The trial court so ruled in promptly sustaining defendants' objection to it and twice admonishing the jury to disregard it. However, we do not regard the denial of a mistrial in this instance as reversible error.

We do not think that any of defendants' substantial rights were prejudiced. United States v. Chiarella, 2 Cir., 1950, 184 F.2d 903. In this case the evidence of defendants' guilt was clear and convincing; and, in our opinion, the mere asking of this question could not have been a decisive factor in influencing the jury to return its verdict of guilt. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 60 S.Ct. 811, 84 L. Ed. 1129. In the absence of "a clear and obvious abuse of a trial court's discretion in refusing a mistrial," we are not justified in reversing the judgment below. Schaefer v. United States, 8 Cir., 1959, 265 F.2d 750, 753. We hold that the trial court did not commit reversible error in refusing to declare a mistrial.

We have carefully considered the assignments of error pertaining to allegedly prejudicial remarks by the trial court and the admission of evidence relating to a telephone conversation and find them without merit.

Defendants further complain about certain instructions given to the jury. We have reviewed all of the instructions given in this case and find that the jury was adequately and properly instructed. The instructions complained of, when read in context with the instructions as a whole, cannot be said to be improper and erroneous; and we so hold.

It is our considered judgment that defendants had a fair and impartial trial. The judgments of the district court in No. 12823 and No. 12824 appealed from are

Affirmed.